In re Charles I. CALISOFF, Debtor.

Sherry CALISOFF, Plaintiff,

v.

Charles I. CALISOFF, Defendant.

Melvyn H. BERKS, Plaintiff,

v.

Charles I. CALISOFF, Defendant.

Owen L. DOSS, Plaintiff,

v.

Charles I. CALISOFF, Defendant.

Bankruptcy No. 87 B 01192.
Adv. Nos. 87 A 0275, 87 A 0276
and 87 A 0471.

United States Bankruptcy Court,
N.D. Illinois, E.D.

July 1, 1988.

James Sprayregen, Lord, Bissell & Brook, Chicago, Ill., for plaintiffs.

Arthur Gold, Kaplan, Gold & Gallagher, Chicago, Ill., for debtor/defendant.

Walter Soroka, Chicago, Ill., for Owen Doss.

## MEMORANDUM OPINION

RONALD S. BARLIANT, Bankruptcy Judge.

These three adversary proceedings come before the Court on cross motions for summary judgement filed by the plaintiffs, Sherry Calisoff, Melvyn H. Berks and Owen L. Doss and by the Debtor/Defendant Charles I. Calisoff. The plaintiffs seek an Order declaring that certain debts arising from the Calisoffs' divorce are non-dischargeable because those debts are for the support of Mrs. Calisoff. They also object to the discharge of his Chapter 7 case because he made false statements and failed to keep adequate records. The Court finds that there are no genuine issues of material fact and concludes that as a matter of law the divorce-related debts are for support and that the Debtor has unjustifiably failed to keep records from which his financial condition or business transactions might be ascertained. Therefore, the Debtor's motion for summary judgement will be

denied and the plaintiffs' motions for summary judgement will be granted.

## I. Background.

On June 13, 1986, the Circuit Court of Cook County entered a judgement for dissolution of marriage in the case of *The Marriage of Sherry Calisoff and Charles I. Calisoff*, No. 82 D 3366. That judgement provides that 1) Charles is to hold his ex-wife harmless on a $40,000 obligation due to the First Illinois Bank of Wilmette she incurred to finance the purchase of the marital home at a sale pursuant to an Internal Revenue Service tax levy, 2) Charles is to hold Sherry harmless on a $3,000 obligation to Ohannes Korogluyn she also incurred to purchase the marital home at the tax sale, 3) Charles is to pay attorney's fees of $7,500 to Owen Doss, who was one of Sherry's divorce lawyers, 4) Charles is to pay attorney's fees of $30,000 to Melvyn Berks, also one of Sherry's divorce lawyers, and 5) Charles is to reimburse Sherry $5,257.51 for payment of the 1983 and 1984 real estate taxes on the marital home. Those five obligations are the debts that the plaintiffs here (Sherry and the two divorce lawyers) allege are non-dischargeable because they are for support.

On January 26, 1987, Charles Calisoff filed for protection under Chapter 7 of the Bankruptcy Code. The Debtor listed some debts pursuant to the divorce judgement on his Schedule A–Statement of all Debts of the Bankrupt. The debts listed on the Schedule A include the five obligations listed above. The Debtor also stated on Schedule A that these debts were part of a property settlement and therefore were dischargeable in bankruptcy.

Sherry Calisoff then filed an adversary proceeding to determine the dischargeability of the five debts. The complaint alleges that they are in the nature of alimony, maintenance or support and therefore are non-dischargeable under § 523(a)(5).[1] The Debtor has answered that these debts are the result of a division of marital property and may be discharged. The complaint further alleges that the Debtor knowingly and fraudulently made false statements and claims in connection with his Chapter 7 filing and failed to keep adequate records from which his financial condition could be ascertained and therefore objects to the Debtor's discharge under § 727(a). The Debtor claims that his records were adequate and denies that any false statements or claims were made.

Both Melvyn Berks and Owen Doss also filed adversary proceedings to determine dischargeability. Both allege that the attorneys' fees awarded to them by the Circuit Court and payable by the Debtor are in the nature of alimony, maintenance or support and therefore are not dischargeable. Mr. Berks further objects to the Debtor's discharge on the same grounds specified by Sherry Calisoff. The Debtor denies that the debts are not dischargeable, claims his records were adequate and denies that he made any false statements or claims.

The plaintiffs in all three adversary proceedings have moved for summary judgement. The Debtor has moved for summary judgement in Sherry Calisoff's and Mr. Berks' adversary proceedings.

## II. Collateral Estoppel.

██ The Bankruptcy Court may look behind a state Court judgement to determine whether a debt is dischargeable. *Klingman v. Levinson*, 831 F.2d 1292 (7th Cir. 1987). In addition, the Bankruptcy Court may in its discretion apply collateral estoppel to issues in the bankruptcy case that 1) were actually litigated in the state Court action, 2) were determined by a final judgement and 3) were essential to the judgement. *Matter of Dohm*, 19 B.R. 134 (N.D. Ill.1982); *In re Wade*, 26 B.R. 477 (Bankr. N.D.Ill.1983). In the case at bar, the issue of dischargeability was not litigated in the state Court. The state Court judgement therefore may not preclude a trial on the issue of dischargeability in the Bankruptcy Court.

---

**1.** Unless otherwise indicated, statutory references are to the Bankruptcy Code, 11 U.S.C. § 101, *et seq.*

Nevertheless, collateral estoppel may be used to preclude re-litigation of certain issues that were litigated in the state Court. Findings on those issues may be considered as evidence in the § 523 dischargeability proceeding and the § 727 discharge proceeding. *See, In re Halpern,* 810 F.2d 1061 (11th Cir.1987); *In re Condict,* 71 B.R. 485 (Bankr.N.D.Ill.1987). To the extent that the findings of fact and conclusions of law in the state Court divorce judgement may be used as evidence in these adversary proceedings, the parties are precluded from relitigating those findings and conclusions.

### III. Standard for Summary Judgement.

Rule 56 of the Federal Rules of Civil Procedure, made applicable to the adversary proceedings in the Bankruptcy Court by Bankruptcy Rule 7056, provides that summary judgement will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgement as a matter of law." In 1986, the Supreme Court decided a trilogy of cases which encouraged the use of the summary judgement motion as a means to efficiently dispose of factually unsupported claims. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electric Industrial Corp. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ("summary judgement procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action' ").

The movant's initial burden is to show that there is no basis in the record for findings of facts that might determine a result of the case in favor of the non-movant. *See, Anderson,* 477 U.S. at 251, 106 S.Ct. at 2510, 91 L.Ed.2d at 214; Childress, *A New Era for Summary Judgments: Re-cent Shifts at the Supreme Court,* 116 F.R.D. 183, 190 (1986). Such a showing would satisfy the movant's burden under Rule 56(c) that there are no genuine issues as to any material facts.

The Supreme Court has now specifically rejected the view that summary judgement will not be granted if there is a scintilla of evidence supporting the non-movant. "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co.,* 475 U.S. at 586, 106 S.Ct. at, 1356, 89 L.Ed.2d at, 552. Instead, once the movant's initial burden is met, the non-movant must show that there is a genuine dispute as to a material fact. *Id.* Of course, all evidence must still be viewed most favorably to the non-movant. *Bartman v. Allis Chalmer Corp.,* 799 F.2d 311, 312 (7th Cir.1986), *cert. denied,* 479 U.S. 1092, 107 S.Ct. 1304, 94 L.Ed.2d 160 (1987). Summary Judgement should not be denied " 'merely because some evidence has been introduced by the party having the burden of proof.' " 477 U.S. at 251, 106 S.Ct. at 2510 quoting *Improvement Co. v. Munson,* 14 Wall 442, 448, 20 L.Ed. 867 (1872).

The parties have filed cross motions for summary judgement. Each motion must be ruled on independently and all motions must be denied if there are genuine issues of material fact. *ITT Industrial Credit Corp. v. D.S. America, Inc.,* 674 F.Supp. 1330, 1331 (N.D.Ill.1987).

Federal Rule of Civil Procedure 56(e) governs the form of affidavits submitted in connection with motions for summary judgement. The parties may not rest on mere allegations set forth in their pleadings, nor may they rest on conclusory statements in their affidavits. *See Posey v. Skyline Corp.,* 702 F.2d 102 (7th Cir. 1983) *cert. denied* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 366 (1983). The Debtor's affidavit merely verifies his answers to the complaints. The Debtor's affidavit does not satisfy the requirement of Rule 56(e). It does not set forth specific facts showing

a genuine issue, but merely rests on the pleadings.

■ Furthermore, Rule 12(e) of this Court's Rules requires that the party moving for summary judgement file a detailed statement of material facts · as to which they contend there is no genuine issue. Rule 12(f) requires that the party opposing the summary judgement motion file a statement of material facts as to which there is a genuine issue. If the non-moving party's 12(f) statement fails to deny the facts set forth in the movant's statement, those facts will be "deemed admitted". The plaintiffs have filed a detailed 12(e) statement. The Debtor has not filed a 12(f) denial. The facts stated in the plaintiffs' 12(e) statement are therefore deemed admitted.

### IV. Facts.

As noted, the facts found by the state Court are, by reason of the doctrine of collateral estoppel, not subject to relitigation and may be taken as established beyond dispute for purposes of these motions. The state Court found that Sherry and Charles Calisoff were married in March of 1962 and they had two children. When the divorce decree was entered, the children were 19 and 16 years of age. The state Court granted physical custody of the children to Mrs. Calisoff.

During the marriage, Mr. Calisoff was an attorney with a successful and lucrative matrimonial practice. His law practice suffered a temporary reduction in income which, the divorce Court found, was either an intentional attempt by Mr. Calisoff to destroy the practice or was a result of the emotional strain brought on by the divorce. The Court further found, however, that the practice would again become lucrative.

The divorce Court further found that Mrs. Calisoff would not be able to support herself through appropriate employment, and that she lacks sufficient income and property to provide for her reasonable needs.

Mr. Calisoff was also found to have dissipated certain marital assets which should have been distributed by the divorce Court.

Specifically, he withdrew $60,000 from his HR–10 plan to satisfy his tax obligations. No explanation was given for Mr. Calisoff's dissipation of an $8,890 tax refund, $8,834 of L.F. Rothchild stock, and $35,000 in cash.

Finally, the divorce Court found that the awards of attorneys' fees to Mr. Berks and Mr. Doss were based on "the total financial picture of the parties".

As also noted, the facts stated in the plaintiffs Rule 12(e) statement will be deemed admitted. According to the plaintiffs' 12(e) statement, Mr. Calisoff failed to provide an estimate of his income on his current statement of income and expenses. The Debtor also withdrew $82,000 from his law practice in 1986. The Debtor's only written financial record of his personal and business financial transactions was a checkbook. The Debtor has failed to maintain even the checkbook since he filed his Chapter 7 petition in January, 1987.

The plaintiffs further state that Mrs. Calisoff forbore from a career outside the home during the marriage and Mrs. Calisoff would be unable to maintain herself, the children and the marital home if the debts listed in the divorce decree were discharged. The Debtor failed to pay his federal income taxes which resulted in the tax sale of the one half beneficial interest in the marital home, which Mrs. Calisoff bought with borrowed funds. Those loans are among the obligations of Mr. Calisoff under the state Court judgement. Mrs. Calisoff and the children continue to reside in the marital home.

There is no genuine dispute as to these facts. The only issue is whether these established facts entitle the plaintiffs or the Debtor to judgement as a matter of law.

### V. Dischargeability of Attorneys' Fees.

Section 523(a)(5) provides that a Debtor is not discharged from debts to a former spouse, in connection with a divorce decree, which are in the nature of alimony, maintenance or support. Paragraph 2(U) of the

Judgement for Dissolution of Marriage awards attorney's fee of $10,000 to Mr. Doss, $7,500 of which is payable by the Debtor, and awards attorney's fee of $40,-000 to Mr. Berks, $30,000 of which is payable by the Debtor.

■ The divorce decree does not specifically state whether the awards of attorneys fees are in the nature of alimony, maintenance or support or in the nature of a property settlement. Such guidance by the state court, even if it had been forthcoming, would not be binding on the Bankruptcy Court in its determination of the debts' dischargeability. *In re Cockhill,* 72 B.R. 339, 343 (Bankr.N.D.Ill.1987). Bankruptcy law, not state law, is controlling when determining what constitutes alimony, maintenance or support. H.R.Rep. No. 95–595, 95th Cong., 1st Sess., 363 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787; *In re Chapman,* 20 B.R. 810 (Bankr.E.D.Va. 1982).

■ Observance of bankruptcy law does not, however, preclude an examination of state law. State law should be considered to determine what prompted the state Court to award the fees. *In re Wells,* 8 B.R. 189 (Bankr.N.D.Ill.1981). In effect, the Bankruptcy Court should examine the totality of the circumstances, which includes state law, to determine the divorce Court's purpose in making the awards and whether the essential elements of maintenance and support are present in the award. *In re Cockhill,* 72 B.R. 339 (Bankr. N.D.Ill.1987); *In re Cornish,* 529 F.2d 1363 (7th Cir.1976).

■ The divorce decree is divided into two sections. The state Court first made its findings of fact. Based on the findings, the Court then presented its order for dissolution of the marriage, payment of support and division of marital property. This later portion of the judgement includes the award of attorneys' fees. The first sentence of paragraph 2 of the order states: "That the marital property is distributed as follows." The order then describes provisions for both the support and maintenance awarded to Sherry Calisoff and the divisions of the marital property in sub-para-

graphs of paragraph 2. The description in the first sentence of paragraph 2 is therefore no indication of the state Court's purpose.

■ Any indication of the state Court's intent must be found in the sub-paragraphs of paragraph 2 where each item awarded is separately described. Sub-paragraph U describes the awards of attorneys' fee. There, the Court based its award upon "the total financial picture of the parties". Use of this language in connection with awarding attorneys' fees strongly suggests that the award was intended to be in the nature of maintenance and support. This conclusion is based on the Illinois statute which authorizes Illinois courts to order one spouse to pay the attorneys' fees of the other and on the case law interpreting the statute. Illinois' Marriage and Dissolution of Marriage Act provides:

> The court from time to time, after due notice and hearing and after *considering the financial resources of the parties,* may order either spouse to pay a reasonable amount of his own costs and attorney's fees and for the costs and attorney's fees necessarily incurred by the other spouse.

Ill.Rev.Stat. ch. 40 § 508(a)(1) (1977) (emphasis added). Many courts have held that an award of attorney's fees under the statute must be based on the ability of one spouse to pay and the inability of the other spouse to do so. *In re Cockhill,* 72 B.R. 339, 342 (Bankr.N.D.Ill.1987); *Bellow v. Bellow,* 94 Ill.App.3d 361, 419 N.E.2d 924, 50 Ill.Dec. 656 (1981). An award of maintenance and support is meant to provide an ex-spouse with necessary goods or services which he or she would otherwise not be able to purchase. *See, Merriman v. Hawbaker,* 5 F.Supp. 432 (E.D.Ill.1934). As such, attorney's fees awarded to a spouse in an Illinois divorce action are generally considered in the nature of maintenance and support. *Cockhill,* 72 B.R. at 342; *Richards v. Loncar,* 14 B.R. 276, 279 (N.D. Ill.1981); *In re Wells,* 8 B.R. 189 (Bankr.N. D.Ill.1981).

Other factors also favor a finding that the award of attorneys' fees are in the nature of maintenance and support. If the spouse receiving the payments receives a direct benefit because she would otherwise have to pay the fees herself, then the payments are in the nature of support. *Wells,* 8 B.R. at 193. Sherry Calisoff would be personally liable for the fees if the Court had not ordered Mr. Calisoff to pay them. She receives a direct benefit from the award which suggests that they are in the nature of maintenance and support.

If the award tends to balance the income of the parties, then the award is in the nature of support. *In re Abitua,* 18 B.R. 674, 676 (Bankr.N.D.Ill.1982). Mr. Calisoff is gainfully employed as an attorney and owns a practice which had been very lucrative. The state Court found that the downturn in his practice was either an intentional attempt to destroy the practice or was the result of the emotional strains of the divorce. In either case, the Court found that Mr. Calisoff's practice will once again become lucrative. On the other hand, Sherry Calisoff was not employed outside the home during the marriage. The award of attorneys' fee can therefore be interpreted as an attempt to balance the income of the parties and this also suggests that the award was in the nature of maintenance and support.

The evidence that the state Court intended the award of attorneys' fees to be in the nature of a property settlement is sparse. Mr. Calisoff suggests that the language in the first sentence of the state Court's order shows the Court's intent to divide the marital property by awarding the attorneys' fees. As mentioned above, this opening language is meaningless because the state Court goes on to describe both divisions of property and support provisions in its order.

The plaintiffs' position that the award of attorneys' fees is in the nature of support and maintenance is supported by all the evidence in the record. All material facts support such a conclusion. The Debtor has not presented specific facts showing that there is a disputed issue. Summary judge-ment will therefore be granted to the plaintiffs, Sherry Calisoff, Mr. Berks and Mr. Doss as to the non-dischargeability of the attorneys' fees awarded by the state Court.

## VI. Dischargeability of the Hold Harmless Provisions and the Real Estate Taxes.

A provision in a judgement of divorce ordering a spouse to hold the other spouse harmless on a debt incurred during the marriage may be in the nature of maintenance and support or may be in the nature of a property settlement. *In re Young,* 72 B.R. 450 (Bankr.D.R.I.1987). When determining the dischargeability of an award by the divorce Court, the Bankruptcy Court must interpret the true purpose of the award. *In re Williams,* 38 B.R. 224 (Bankr.N.D.Okla.1984). The primary factor to be considered by the Bankruptcy Court is whether the obligation was for property or services necessary for the support and maintenance of the children and spouse. *Young,* 72 B.R. at 453; *In re Miller,* 8 B.R. 174, 176 (Bankr.N.D.Oh. 1981). Other factors to be considered by the Bankruptcy Court include 1) the length of the marriage, 2) whether there are children to be provided for, 3) the adequacy of the support obligation without the hold harmless provision, 4) the relative earning power of the spouses, 5) whether the payment is a lump sum or installments, 6) the spouses' relative ownership interests in property, and 7) the placement of the provision in the divorce decree. *Id; In re Maitlen,* 658 F.2d 466 (7th Cir.1981).

Again, each sub-paragraph of paragraph 2 of the decree must be examined on its own to determine the intent of the state court. Sub-paragraph B orders the Debtor to hold Sherry Calisoff harmless from the two obligations in question. There is no language in sub-paragraph B which suggests that the provision is either maintenance and support or a property settlement. Sub-paragraph B is located immediately after a provision for maintenance and support and immediately before a distribution of property. Other maintenance and support provisions are spread throughout

the state Court's order. The placement and language of the hold harmless provisions is therefore uninformative.

The Debtor points out that the state Court ordered the Debtor to pay maintenance of $832 per month to Sherry Calisoff for a period of five years. These monthly payments were to be reviewed in 1988 in light of Mrs. Calisoff's income development and Mr. Calisoff's law practice at that time and the payments were to be adjusted accordingly. These payments were in addition to Mr. Calisoff's responsibility for the mortgage payments on the marital home and child support of $750 per month until the minor child reached 18 years of age in 1988.

The state Court found that even taking into account the marital property awarded to Sherry Calisoff, she could not support herself. The state Court awarded her a relatively small amount for support. Certainly, if the state Court had required her to pay the debts on the marital home, the award of support would have been greater. Requiring the Debtor to pay the debts was, viewed from that light, in lieu of support and "in the nature of support." *See, In re Young*, 72 B.R. 450 (Bankr.D.R.I.1987).

There are a number of other factors which indicate that the hold harmless provisions represent support and maintenance rather than a property settlement. First, The Debtor's earnings were far more than the plaintiff's. Second, Mr. and Mrs. Calisoff were married for approximately 24 years and their marriage produced two children. Third, the two debts in question were incurred by Sherry Calisoff to purchase a one half beneficial interest in the marital home at an Internal Revenue Service tax sale. Sherry Calisoff and the two children of Mr. and Mrs. Calisoff reside at the home. The debts therefore represent property that is necessary for the maintenance of Sherry Calisoff and the children.

In *In re Maitlen*, 658 F.2d 466 (7th Cir. 1981), the Court found that the Debtor's obligation under a property settlement agreement to pay the mortgage payments on the marital home were in the nature of maintenance and support and therefore were nondischargeable. The Debtor's obligation to make the mortgage payments was found in a document titled "Property Settlement Agreement". Nevertheless, the Court found that the agreement contained both property dispositions and support provisions which rendered the document's title irrelevant. 658 F.2d at 469. The *Maitlen* Court also found that the obligation to make the mortgage payments was meant to balance the parties' relative income. *Id.* There, as in this case, the Debtor provided the sole source of income for the family. The Court also based its finding on the fact that the spouse and the minor children were to occupy the marital home. *Id.* Since the obligation was to make the mortgage payments on the marital home, the Court found that the underlying obligation was for maintenance and support, even though separate provisions specifically provided support for the spouse and the children.

The Debtor argues that separate provisions have been made for the support of the children and Sherry Calisoff. The Court in *Maitlen* stated that additional and separate provisions which provide that the Debtor will pay support for the spouse and the children "[do] not preclude the possibility that the mortgage payments ... would constitute support." 658 F.2d at 470. Other courts have also stated that payments for a spouse's housing is in the nature of maintenance and support. "It is safe to say that the obligation to maintain and support a family includes the obligation to keep a roof over their heads". *In re Henry*, 5 B.R. 342, 343 (Bankr.M.D.Fla.1980) quoting *Poolman v. Poolman*, 289 F.2d 332, 335 (8th Cir.1961).

Further, the state Court found that Sherry Calisoff was without sufficient property or income to support her reasonable needs and was unable to support herself through appropriate employment. These findings indicate that the hold harmless provisions were based on the financial needs of Sherry Calisoff, which is strong evidence of maintenance and support. *See, Maitlen*, 658 F.2d at 469.

The Debtor cites *In re Miller*, 8 B.R. 174 (Bankr.N.D.Oh.1981) to support his assertion that the debts are dischargeable. There, the debts were held to be dischargeable in bankruptcy primarily because the obligations were on a travel trailer, general merchandise and gasoline which were not considered necessary for the support and maintenance of the spouse and the children. In the case at bar, the obligations are for the marital residence which undoubtedly is necessary for the support and maintenance of the spouse and the children.

Mrs. Calisoff has met her burden to show that there are no genuine issues as to any material facts. The only evidence which supports the Debtor's position is that the state Court awarded Mrs. Calisoff $832 per month. Under the standard for summary judgement discussed above, this evidence does not meet the Debtor's burden. The plaintiff's motion for summary judgement will therefore be granted as to the non-dischargeability of the hold harmless provisions.

 The divorce Court also ordered the Debtor to pay $5,257.51 to Mrs. Calisoff for the 1983 and 1984 real estate taxes on the marital home. For the same reasons discussed above, payment of this amount is in the nature of maintenance and support. Accordingly, the plaintiff's motion for summary judgement will also be granted as to the non-dischargeability of the $5,257.51 payment.

### VII. Denial of Discharge under § 727(a).

Mrs. Calisoff and Mr. Berks object to the Debtor's discharge under § 727(a) of the Bankruptcy Code. Their complaints allege that the Debtor's schedules 1) include debts for which he is not liable, 2) misstate the amounts of certain debts, 3) fail to list items of personal property, and 4) fail to list the income from the Debtor's law practice. The complaints also allege that the Debtor failed to keep records from which his financial condition might be adequately ascertained. The Debtor's answers deny these allegations. The Debtor answers that he was unsure as to his debts and wished to avoid any omissions. He therefore listed all debts for which he believed he was liable at the time the schedules were filed. The Debtor's answer states that any property not listed on the schedules was either sold or was never property of the Debtor. The answer also states that the Debtor failed to list the income from his law practice because the amount was too speculative. Finally, the Debtor denies that his records were inadequate for bankruptcy purposes.

Both plaintiffs have moved for summary judgement on the issue of the Debtor's discharge under § 727. The Debtor has also made cross-motions for summary judgement on this issue.

 The plaintiffs seek to deny the Debtor his discharge under § 727(a)(4) which provides that no discharge will be granted if:

the Debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account;

(B) presented or used a false claim.

11 U.S.C. § 727(a)(4). If the Debtor's bankruptcy schedules reflect a "reckless indifference to the truth" then the plaintiff seeking denial of the discharge need not offer any further evidence of fraud. *In re Gugliada*, 20 B.R. 524, 528 (Bankr.S.D.N. Y.1982). Any false oath sufficient to deny the Debtor his discharge must relate to a material fact and must be made knowingly and fraudulently. *In re Savel*, 29 B.R. 854 (Bankr.S.D.Fla.1983). A claim or statement is material if it hinders the administration of the estate. *Id.*

 The plaintiffs allege that certain debts listed on Schedule A are in fact not debts of the Debtor. These debts include all debts on the marital residence, general family expenses (credit cards, doctors bills, garbage collection ...), and a $22,000 loan to the Debtor's secretary. It is not clear from the proffered evidence whether the Debtor knew he was not liable for these debts at the time the schedules were filed. In any event, listing debts for which Debtor may not be liable would not

necessarily hinder the administration of the estate. In fact, the Debtor has a duty to list all questionable debts for which he may be liable. *See, In re Bryant*, 47 B.R. 21, 25 (Bankr.W.D.N.C., 1984). There is also insufficient evidence to determine whether the "loan" to the secretary was fraudulent. As to the $25 debt to Dr. Madenberg which is listed as $2,500, the Debtor claims that there was a typographical error. This discrepancy does not hinder the administration of the estate and therefore is not material.

■ The parties have also presented no evidence as to whether the Debtor fraudulently failed to list certain assets or whether those assets were in fact sold. The plaintiffs only make assertions in their complaints and memorandum that the Debtor possesses certain items and his schedules fail to reflect those items. No proof is offered for these assertions. The Debtor on the other hand offers no evidence that the items in question have been sold.

Finally, the plaintiffs contend that the Debtor's failure to list any income on his Schedule of Current Income and Current Expenditures is a false statement sufficient to deny the Debtor's discharge under § 727(a)(4). The Debtor claims that his income was too speculative to state on the schedules. Given the divorce Court's findings concerning the demise of the Debtor's law practice, the speculative nature of the Debtor's income is not unbelievable.

The plaintiffs and the Debtor have failed to meet their initial summary judgement burdens on the issue of the Debtor's discharge under § 727(a)(4).

■ Section 727(a)(3) of the Bankruptcy Code provides for the denial of a discharge if:

the Debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the Debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

11 U.S.C. § 727(a)(3). Initially, it is the plaintiff's burden to prove that the Debtor failed to keep adequate records. *In re Savel*, 29 B.R. 854, 865 (Bankr.S.D.Fla. 1983). The plaintiff need not prove that the Debtor intended to defraud anyone. *Id.* If the plaintiffs satisfy their burden of proof on this issue, the burden is then on the Debtor to show that the otherwise inadequate records were justified under the circumstances. *Id; See In re Waldroop*, 22 B.R. 284, 286 (Bankr.D.N.M.1982).

■ The issue is whether "the present financial condition of the [Debtor] and his business transactions for a reasonable period in the past may be ascertained with substantial completeness and accuracy." *In re Reitz*, 69 B.R. 192, 197 (Bankr.N.D. Ill.1986), quoting *International Shoe Co. v. Lewine*, 68 F.2d 517, 518 (5th Cir.1934). The court should consider the sophistication of the Debtor, his business experience, the size of the Debtor's business and all other relevant circumstances. *Id.*

■ The plaintiffs provide the following evidence to support their claim that the Debtor's records were inadequate:

1) Various assets disappeared during the divorce proceeding. Specifically, $35,000 was withdrawn from a bank account, $60,-000 was withdrawn from the Debtor's HR 10 plan, an $8,890 tax refund was used by the Debtor and, $8,834 of L.F. Rothchild stock was used by the Debtor.

2) The Debtor's income from his law practice inexplicably dropped.

3) The Debtor's only records were a checkbook which he kept until January, 1987 when he ceased to maintain any records.

The divorce decree provides some guidance. It states that some assets were dissipated by the Debtor. The L.F. Rothchild stock, the $35,000, and the tax refund were not accounted for. The $60,000 was apparently used to satisfy the Debtor's income tax obligations. Without the divorce Court's complete records before us, it is impossible to determine whether the Debtor presented some records to show that the

$60,000 was used to pay taxes. On the other hand, it is clear that no records were presented to trace the stock, the tax refund and the $35,000 cash. These uncontested facts tend to show that the Debtor's financial condition could not be ascertained for a reasonable period in the past. *Reitz,* 69 B.R. at 197.

In addition, Sherry Calisoff's affidavit states that the Debtor admitted in the August 14, 1987 divorce proceeding that he has maintained no records since January of 1987. The Debtor is a well educated, sophisticated business person. He has maintained a successful law practice for years. Failure to keep any records of his financial transactions is inexplicable.

In *In re Savel,* 29 B.R. 854 (Bankr.S.D. Fla.1983), the Court denied discharge to the Debtor in the Chapter 7 proceeding. The Debtor failed to adequately explain the loss of assets worth $630,000. The Court found that this evidence satisfied the plaintiff's initial burden to show lack of adequate records. Discharge was denied when the Debtor failed to justify the lack of records under the circumstances. The denial of discharge was also based on material false statements, knowingly and fraudulently made by the Debtor on his schedules and statements.

Similarly, the divorce Court found no reasonable explanation for the dissipation of Mr. Calisoff's assets. Moreover, no explanation is offered by Mr. Calisoff for his failure to keep records since January of 1987. Mr. Calisoff also failed to estimate the income from his law practice and list the estimate on his schedules. These uncontested facts, taken together are sufficient to deny Mr. Calisoff his discharge under § 727(a)(3). Accordingly, the plaintiffs have carried their initial burden under the summary judgement standards and the Debtor has offered no specific facts to show that there are genuine issues of material fact. The plaintiffs' motion for summary judgement will therefore be granted on the discharge issue.

The uncontroverted evidence presented by the plaintiffs in all three adversary proceedings satisfies the standard under Fed. Rule of Civil Procedure 56(c). There are no genuine issues of material fact. Accordingly, the plaintiffs' motions for summary judgement will be granted and the Debtor's motions for summary judgement will be denied.