**In re Martin J. ELLIS, Debtor.**

**Martin J. ELLIS, Plaintiff,**

v.

**Linda ELLIS, Defendant.**

**Bankruptcy No. 83 B 7311.
Adv. No. 88 A 739.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

Aug. 15, 1989.

Neil P. Gantz, for debtor.

Gregory K. Stern, for defendant.

## MEMORANDUM OPINION
## AND ORDER

DAVID H. COAR, Bankruptcy Judge.

This matter comes before the Court on the adversary complaint brought by the Plaintiff, MARTIN J. ELLIS. This is a core proceeding over which the Court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(I) as a proceeding to determine the dischargeability of a debt. The following constitutes the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052. For the reasons contained herein, the Court finds the debt dischargeable.

### Facts

Martin Ellis [Plaintiff] and Linda Ellis [Defendant] were married on March 4, 1967. The parties did not have children. During the course of the marriage, the Plaintiff was a promoter of antique and fitness shows, under the name of Stratford Manor Productions. The Defendant worked as a schoolteacher for eight years during the marriage. In June, 1978, she quit her teaching position in order to travel with the Plaintiff whose business demanded a great deal of travel.

The parties' marriage was not without problems, and in May, 1982, the parties separated and amicably divided their personal property. At this time, the Plaintiff's business was experiencing severe losses. Although the Defendant did not return to teaching after the separation, she worked various part-time jobs. The Plaintiff continued in the operation of his fledgling business.

In December, 1982, the Defendant retained Evan James Mammas to represent her in her dissolution of marriage proceedings. In mid-January of 1983, the Plaintiff and the Defendant met at Mr. Mammas' residence to discuss a settlement of the marital estate. The Plaintiff was not represented by counsel. Prior to the meeting, Mr. Mammas reviewed the Plaintiff's assets and liability statement. Mr. Mammas

learned that the Plaintiff was in poor financial health.

On February 14, 1983, the Plaintiff and the Defendant executed a "Memorandum of Agreement" (settlement agreement). Among other things, the settlement agreement provided that both parties waived their rights to alimony and maintenance. However, the agreement did provide that the Defendant was to receive from the Plaintiff a "property settlement" in the sum of $700.00 per month for 36 months, for a total of $25,200.00. These monthly payments were to commence after the sale of the marital residence. In addition, the agreement provided that the Plaintiff would hold the Defendant harmless on all debts arising from Stratford Manor Productions. The settlement agreement also granted the Defendant exclusive use and occupancy of the marital home until it was sold.[1] The agreement further recited that the Plaintiff was responsible for the mortgage payments on the marital residence, until it was sold. At the time of the settlement agreement, the Defendant was employed at a shoe store earning $200.00 per week against commissions. Meanwhile, the Plaintiff's income fluctuated with the success or failure of his businesses. On January 27, 1983, the Defendant filed her petition for dissolution of marriage; and on February 21, 1983, a divorce decree was entered, incorporating the agreement.

On February 24, 1983, the Plaintiff and the Defendant executed a "Reaffirmation Agreement." Essentially, the reaffirmation agreement provided that in the event the Plaintiff declared bankruptcy, he would reaffirm his debt to the Defendant, arising from the settlement agreement. The reaffirmation agreement was executed because the Defendant and her attorney, were concerned that the Plaintiff might file a bankruptcy petition.

The Defendant's concerns proved well-founded. On June 10, 1983, the Plaintiff filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code [Code].

Subsequently, the Chapter 11 case was converted to a Chapter 7 case on July 19, 1983. The Defendant also filed a Chapter 7 petition on June 10, 1983.[2] The parties were represented by the same law firm in their separate bankruptcy proceedings. The Plaintiff did not list in his schedule of debts a debt to the Defendant arising from the settlement agreement. Similarly, the Defendant did not list the Debtor's debt to her as an asset on her schedule. On January 17, 1984, the Defendant received a discharge in her bankruptcy case and on February 21, 1984, a discharge order was entered in the Plaintiff's Chapter 7 case. After the discharge, no monies were paid by the Plaintiff to the Defendant pursuant to the divorce decree. Several months later, the Defendant wrote a letter to the Plaintiff, wherein she requested to meet with him in order to discuss his debt to her. Apparently, this meeting never took place. Subsequently, the Plaintiff relocated to Los Angeles, California. Several years later, the Defendant's uncle, an attorney, wrote to the Plaintiff and advised him to either commence making the payments called for in the settlement agreement, or face legal proceedings. Although the Plaintiff received the letter, he did not make any payments to the Defendant. In 1988, the Defendant commenced an action in the Superior Court of the State of California for the County of Los Angeles, wherein she sought enforcement of the divorce decree against the Plaintiff.

Thereafter, the Plaintiff moved to reopen his Chapter 7 case in order to add the Defendant as a creditor to be discharged along with his remaining creditors. This Court granted the Plaintiff's Motion to Reopen and the Plaintiff instituted this adversary proceeding seeking an order declaring that the debt due to the Defendant is dischargeable. The Defendant filed her answer to the Debtor's complaint, objecting to the dischargeability of said debt.

---

1. The Defendant resided in the marital home until November, 1983. Some time in late 1983, the marital residence was foreclosed upon.

2. The Defendant filed for Chapter 7 relief because she had co-signed and guaranteed many of the Plaintiff's business loans.

## Discussion

■ As a preliminary matter, the Court must address a procedural issue raised by the parties. Ordinarily, when a complaint to determine the dischargeability of a debt is filed, the debtor's creditor is the plaintiff and the debtor is the adverse party. In this case, however, the roles are reversed. Here, it is the debtor who brought the complaint to determine dischargeability of the debt, thus making the creditor the defendant. This alignment is unusual but not unheard of. It has raised the question as to which party has the burden of proof on the issue of nondischargeability. The Plaintiff contends that notwithstanding the fact that he brought this action, the burden to prove nondischargeability rests upon the defendant. The Defendant, on the other hand, claims that once an objecting creditor has produced prima facie evidence that the debt is nondischargeable, the burden shifts to the debtor to prove that it is entitled to a discharge.

The first issue before the Court is whether the ultimate burden of proof in an action to determine the dischargeability of a debt rests with the plaintiff.

It is well settled that the party seeking to establish an exception to the discharge of a debt bears the burden of proof. *In re Belfry*, 862 F.2d 661, 662 (8th Cir.1988); *In re Long*, 794 F.2d 928, 931 (4th Cir.1986); *In re Black*, 787 F.2d 503, 505 (10th Cir. 1986); *In re Hunter*, 780 F.2d 1577, 1579 (11th Cir.1986). But once the objecting party establishes a prima facie case of nondischargeability, the burden of going forward shifts to the debtor to rebut that evidence.[3] *See, In re Gans*, 75 B.R. 474, 482 (S.D.N.Y.1987). The ultimate burden of persuasion, however, remains with the objecting party.[4] *See, In re Martin*, 698

F.2d 883, 887 (7th Cir.1983). Moreover, although the Code is silent on the matter, the objecting party must prove the nondischargeability of a debt by clear and convincing evidence. *In re Bogstad*, 779 F.2d 370, 372 (7th Cir.1985); *In re Iaquinta*, 98 B.R. 919, 922 (N.D.Ill.1989); *see also, In re Kimzey*, 761 F.2d 421, 424 (7th Cir.1985); *but see, Combs v. Richardson*, 838 F.2d 112, 116 (4th Cir.1988) (applying preponderance of the evidence standard). *In re Slingerland*, 87 B.R. 981 (S.D.Ill.1988) The clear and convincing standard of proof is defined as "that which establishes in the mind of the trier of fact the firm belief or conviction as to the obligation sought to be established." *In re Krause*, 44 B.R. 159, 161 (N.D.Ill.1984). This more exacting burden of proof is consistent with the Code policy that exceptions to discharge must be strictly construed against a creditor and liberally in favor of a debtor, in order to effectuate the Congressional intent of a "fresh start" for debtors. *See, In re Rahm*, 641 F.2d 755, 756–57 (9th Cir.1981) cert. denied 454 U.S. 860, 102 S.Ct. 313, 70 L.Ed.2d 157 (1981).

Accordingly, in this case, it is the Defendant who bears the burden of establishing by clear and convincing evidence that the settlement award was in the nature of maintenance, and therefore nondischargeable.

Before addressing the nature of the Plaintiff's obligation, the Court must first consider whether the reaffirmation agreement executed by the parties is enforceable.[5]

■ A reaffirmation agreement is enforceable only if: 1) the agreement was made in advance of the debtor's discharge; 2) the agreement contains a clear and conspicuous statement advising the debtor

---

3. The burden of persuasion, unlike the burden of going forward with evidence, does not shift from party to party, but remains fixed on the party who asserted the affirmative of the issue. Jones on *Evidence*, § 5.2 at 524–525 (6th ed. 1972); *see also* G. Lilly, *An Introduction to the Law of Evidence*, § 3.1 (2d ed. 1987).

4. The cases cited by the Defendant in support of his proposition are not in conflict with this analysis. On the contrary, those cases reassert

the proposition that the ultimate burden of proof lies with the party claiming nondischargeability. *See, In re Gans*, 75 B.R. 474 (S.D.N.Y., 1987); *In re Waldman*, 33 B.R. 328 n. 2 (S.D.N.Y.1983)

5. Although neither of the parties raised or briefed this issue, the Court finds its resolution relevant to this case.

that the agreement may be rescinded any time prior to discharge or within 60 days after the agreement is filed with the court, whichever occurs later; 3) the agreement has been filed with the court; 4) the debtor has not rescinded the agreement; 5) the debtor has been warned by the judge as to the effects of the agreement; 6) the court finds that the agreement does not impose an undue hardship on the debtor; and 7) the court finds that the agreement is in the debtor's best interest. 11 U.S.C. § 524(c). These measures are necessary to prevent the debtor from being coerced into signing a reaffirmation agreement and to enable the debtor to be fully aware of its consequences. *In re Smurzynski,* 72 B.R. 368, 371 (N.D.Ill.1987).

■ Applying this analysis to the reaffirmation agreement in this case, the Court finds that: 1) the agreement was made prior to the debtor's discharge; 2) the agreement, however, did not inform the debtor that he could rescind the agreement; 3) nor was the agreement filed with the Court. Clearly the reaffirmation agreement in this case fails to satisfy § 524(c). Therefore, it is unenforceable.

Having determined that the reaffirmation agreement is unenforceable and that the Defendant has the ultimate burden of proving nondischargeability of the debt, the Court must address whether the Defendant has sustained that burden. The Defendant contends that it was the intention of the parties at the time the divorce decree was entered that the Defendant be provided with a monthly payment of rehabilitative maintenance and support over a three-year period in order to help her make the transition from married life to single life.

The Plaintiff responds that the settlement agreement means what it says, and no maintenance or support was intended. The Plaintiff notes that the settlement agreement contained a "mutual waiver of maintenance" provision. Moreover, the

Plaintiff points out that the agreement itself labeled the award a "property settlement". The Plaintiff contends that he agreed to pay the Defendant $25,200.00, because it was his understanding that in return, the Defendant would relinquish her interest in Stratford Manor Productions. The Plaintiff explains that he did not fulfill his obligation to the Defendant, however, because he believed said obligation was contingent upon the success of his businesses. According to the Plaintiff, his obligation to the Defendant died with the business. Lastly, the Plaintiff claims that under the factors set forth in *In re Calisoff,* 92 B.R. 346 (N.D.Ill.1988) the award was in the nature of a property settlement.[6]

A fundamental goal of bankruptcy law is to give honest debtors a fresh start "unhampered by the pressure and discouragement of pre-existing debt." *Lines v. Frederick,* 400 U.S. 18, 19, 91 S.Ct. 113, 113, 27 L.Ed.2d 124 (1970). Thus, the Code allows individual debtors to discharge most debts in bankruptcy in order to allow those debtors to obtain a "fresh start." *See, Local Loan Co. v. Hunt,* 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1933). This "fresh start" policy, however, is tempered by a Congressional recognition that certain competing public policy interests shall take precedence. *Forsdick v. Turgeon,* 812 F.2d 801, 802 (2d Cir.1987). These competing concerns are reflected in the exceptions that Congress has enacted to the general rule that debts are dischargeable in bankruptcy. *Id.* These exceptions are contained in § 523. *See,* 11 U.S.C. § 523. At issue in this case is the exception contained in § 523(a)(5)(B).

§ 523(a)(5)(B) provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . .

6. In *Calisoff,* the court considered, among others, the following factors in determining the nature of the obligation: 1) the length of the marriage; 2) whether there are children to be provided for; 3) adequacy of the support obligation; 4) the relative earning power of the spouses; 5) whether the payment is in lump sum or installments; 6) the spouse's relative ownership interests in property; and 7) the placement of the provision in the divorce decree. *Calisoff,* supra at 353.

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

. . . .

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support; . . . .

■ This exception clearly reflects Congress' determination that the maintenance and support interests of a former spouse and offspring shall take precedence over the interests of the bankrupt. This policy is consistent with our Anglo–American tradition, which accords a special sanctity to the support obligation. *Rose v. Rose,* 481 U.S. 619, 637, 107 S.Ct. 2029, 2039, 95 L.Ed.2d 599 (1986) (O'Connor, J., concurring). Thus, if the payment is for alimony, maintenance or support, the debt is nondischargeable,. but if the payment is a property settlement, the debt is dischargeable. *In re Raff,* 93 B.R. 41, 44 (S.D.N.Y.1988). Whether an obligation arising out of a divorce settlement is in the nature of alimony, maintenance, or support is a matter of federal bankruptcy law. *Sylvester v. Sylvester,* 865 F.2d 1164, 1166 (10th Cir.1989). Moreover, a bankruptcy court is not bound by any label which the state court places upon the award. *In re Woods,* 561 F.2d 27, 29 (7th Cir.1977). That is not to say, however, that state law is irrelevant. On the contrary, state law may in fact provide relevant guidance. *In re Calisoff,* 92 B.R. 346 (N.D.Ill.1988). After all, there is no federal law of domestic relations. *DeSylva v. Ballentine,* 351 U.S. 570, 580, 76 S.Ct. 974, 979, 100 L.Ed. 1415 (1956). In determining whether an obligation arising out of a settlement agreement is designed for the support of a former spouse, the bankruptcy court must look beyond the agreement to the intent of the parties at the time agreement was executed. *See, e.g., In re Coil,* 680 F.2d 1170 (7th Cir.1982).

The Seventh Circuit, in determining whether a debt is alimony or a property settlement, has considered the following factors: 1) whether the obligation terminates upon the death or remarriage of either spouse; 2) whether the obligation is payable in a lump sum or in installments over a period of time; 3) whether the payments attempt to balance the parties' income; 4) the characterization of the obligation in the decree; and 5) the placement of the obligation within the decree. *See, In re Woods,* 561 F.2d 27 (7th Cir.1977); *In re Maitlen,* 658 F.2d 466 (7th Cir.1981); *In re Coil,* 680 F.2d 1170 (7th Cir.1982).

■ Applying these factors to the present case, the Court finds that the Defendant has failed to sustain her burden of proof that the obligation was alimony or maintenance. First, the agreement is silent as to whether the Plaintiff's obligation to make the payments terminates upon the death or remarriage of either party. Generally, the obligation to pay maintenance terminates upon the death or remarriage of either party. *See, In re Woods,* 561 F.2d 27 (7th Cir.1977). Second, although the Plaintiff's obligation is payable in monthly installments, like a maintenance obligation, this factor is not indicative that the award is maintenance because a property settlement obligation can also be structured as a monthly payment. Third, the Defendant failed to adduce any evidence that the obligation was intended to balance the parties' income. At the time the settlement agreement was executed, the Defendant was earning approximately $200.00 per week against commissions, a sum substantially below that which she enjoyed during the marriage. The Plaintiff, however, was no better off. His income was tied to the success of his business which was losing money. Fourth, the agreement labeled the award "property settlement." The Defendant and her attorney both testified that the award was termed "property settlement" in order to avoid the tax consequences to the Defendant of labelling the income "maintenance", but that what was

intended was rehabilitative maintenance. The Court is unconvinced. Although the Court is not bound by labels affixed by the parties in the settlement agreement, the terms of the agreement may further evince the parties' intent.[7] Moreover, the agreement provided that it was non-modifiable, an uncommon characteristic of a maintenance obligation. Lastly, the Plaintiff's obligation is found in the agreement under the heading, "Division of Marital Property." While this factor, without more, is not indicative of a property settlement, when read in conjunction with the other factors, leads this Court to conclude that the parties intended the Plaintiff's obligation as a property settlement.

Accordingly, the Court finds that Defendant has not satisfied her burden of proof in the instant case of establishing by clear and convincing evidence that the parties intended the Plaintiff's obligation in the settlement agreement to constitute payments in the nature of alimony, maintenance or support within the meaning of § 523(a)(5)(B).

### Conclusion

IT IS HEREBY ORDERED that the Plaintiff's debt of $25,200.00 arising from the divorce decree is dischargeable.

---

**7.** The Defendant contends that another factor indicating that maintenance was intended is the fact that the Plaintiff's "property settlement" obligation was secured by a life insurance policy, a device frequently used to secure maintenance obligations. The Court finds this argument unpersuasive. Clearly this security device could have been intended to secure the Plaintiff's property settlement obligation to the Defendant, particularly in light of the fact that the Plaintiff did not have other property to secure his payment obligation.