**In re James M. BRADARIC, Debtor.**

**Mary E. BRADARIC, Plaintiff,**

**v.**

**James M. BRADARIC, Defendant.**

**Bankruptcy No. 91 B 4682.**
**Adv. No. 91 A 472.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

June 4, 1992.

Francis E. Mosetick, P.C., Oak Brook, Ill., for plaintiff.

Mark L. Prager, Chicago, Ill., Trustee—Foley & Lardner.

Ronald B. Lorsch, Hazel Crest, Ill., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JACK B. SCHMETTERER, Bankruptcy Judge.

This matter was tried before the Court on this Adversary Complaint of Plaintiff, Mary Bradaric, to bar dischargeability of certain debts owed to her by Debtor James Bradaric pursuant to 11 U.S.C. §§ 523(a)(5)(B). A hearing was held at which the parties submitted a list of stipulated facts and documents and rested on that record. No other evidence was offered by either party. Having considered the pleadings, stipulations, and all other submissions of counsel, the Court makes and enters these Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

1. James and Mary Bradaric were married on August 17, 1985. They had one child during their marriage. They later separated. By a Temporary Support Order of the Circuit Court of Will County dated September 29, 1989 (the "Order"), custody of the child was given to Ms. Bradaric, and Debtor was ordered to pay $190 per week in child support. Stip.Ex. B., ¶ 3. The Order also obligated Debtor to pay minimum monthly payments on debts owed to Ford Motor Credit, Dervan Furniture, Bank One Visa, Gary–Wheaton Bank Visa, and Hedges Clinic. Stip.Ex. B., ¶ 4. The Order gave Ms. Bradaric exclusive possession of the marital residence, but obligated her to make all the mortgage and utility payments and pay all the real estate taxes. Stip.Ex. B., ¶ 5.

2. The couple was later divorced by Judgment for Dissolution of Marriage entered in the Circuit Court of Will County on April 2, 1990 (the "Judgment"). The Judgment incorporates a Settlement Agreement dated March 19, 1990 that provides terms and conditions for the custody of their child, the division of their real and personal property, the repayment of their debts, and other issues. The Debtor made these promises in the agreement:

(1) to pay $125 per week in child support. Stip.Ex. A., Art. II, ¶ 3.

(2) to maintain hospitalization insurance for the child. Stip.Ex. A., Art. II, ¶ 4.

(3) to obtain and continue life insurance on himself with the child as beneficiary. Stip.Ex. A., Art. II, ¶ 5.

(4) to convey by quitclaim deed all of his interest in the marital residence. Stip.Ex. A., Art. III, ¶ 3.

(5) to be solely responsible for all liability arising from his possession of a 1990 Ford pickup truck purchased shortly before the divorce judgment was entered, and to "save harmless" his ex-wife from any liability thereon. Stip.Ex. A., Art. IV, ¶ 2.

(6) to pay certain bills owed to Household Finance retail, Household Finance VISA, and Gary–Wheaton Bank, and to "save harmless" his ex-wife on these bills. Stip.Ex. A., Art. VI, ¶ 1.

(7) to pay half (or $500) of the debt owed to Hedges Clinic. Stip.Ex. A., Art. VI, ¶ 4.

3. While the agreement obligates Debtor to make certain payments for the support of his child, Article VII provides that, "[h]usband and [w]ife having represented to each other that they are capable of supporting themselves ... agree to waive any and all claims to maintenance that they may have against each other, and said claims shall be forever barred, terminated and ended." Stip.Ex. A.

4. Ms. Bradaric sold the residence on May 29, 1990. Stip.Exs. C and D. At that time, she held little or no equity in the property. See Stip.Ex. D (After paying off the mortgage and other expenses, she netted only $687.52).

5. Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code on March 5, 1991. The Trustee Mark Prager has filed a no-asset report on April 30, 1991, and an order closing the bankruptcy proceeding except for resolution of this case was entered on September 13 of that year. Through bankruptcy, Debtor seeks to discharge obligations incurred under the settlement agreement. Stip. ¶ 3. While

Debtor admits that his obligations to pay child support and to maintain life and health insurance for the child are nondischargeable, he denies that the debts owed to Hedges Clinic, Household Finance retail, Household Finance VISA, or the Gary–Wheaton Bank are nondischargeable. Answer ¶ 8.

6. Further facts set forth in the Conclusions of Law will stand as additional Findings of Fact. Legal standards set forth in the Findings of Fact will stand as additional Conclusions of Law.

## CONCLUSIONS OF LAW

1. This matter is before the Court pursuant to 28 U.S.C. § 157, and is referred here under Local District Court Rule 2.33. The Court has subject matter jurisdiction under 28 U.S.C. § 1334, and this is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

2. Plaintiff's burden under 11 U.S.C. § 523(a) is to establish all necessary elements by a preponderance of the evidence. *Grogan v. Garner.* ⸺ U.S. ⸺, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

3. Section 523(a)(5) of the Bankruptcy Code provides,

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

.     .     .     .     .

(5) to a spouse, former spouse, or child of the debtor, for alimony, maintenance or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

.     .     .     .     .     .

(B) such debt includes a liability designated as alimony, maintenance or child support, unless such liability is actually in the nature of alimony, maintenance or child support.

11 U.S.C. § 523(a)(5)(B). Thus, obligations to pay alimony, maintenance and child support are not dischargeable in bankruptcy.

Since maintenance was waived, the issue here is whether the contested debts amounted to child support.

4. However, obligations that arise as part of the division of marital property are dischargeable. *In re Coil*, 680 F.2d 1170, 1171 (7th Cir.1982); *In re Haas*, 129 B.R. 531, 535 (Bankr.N.D.Ill.1989).

5. Whether a debt constitutes alimony, maintenance, or child support is determined under federal bankruptcy law and not state law. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 364 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 6320; S.R. No. 95–989, 95th Cong.2d Sess. 79 (1978), reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5865; *In re Gianakas*, 917 F.2d 759, 762 (3rd Cir.1990); *In re Calisoff*, 92 B.R. 346, 352 (Bankr.N.D.Ill. 1988). The issue in this case is whether the various disputed provisions of the Dissolution Judgment and Agreement incorporated therein were intended to provide support for Ms. Bradaric and the Bradaric's child or whether they were merely intended to divide the marital property between the Bradarics. *In re Coil*, 680 F.2d at 1171.

6. Since the intent of the parties and the divorce court is controlling, the Court is not bound by any labels which are placed upon awards by the Judgment and Agreement, though such labels may well be pertinent evidence. *In re Woods*, 561 F.2d 27, 29 (7th Cir.1977); *In re Haas*, 129 B.R. at 536.

7. "An award of maintenance and support is meant to provide an ex-spouse with necessary goods or services which he or she would otherwise not be able to purchase." *In re Calisoff*, 92 B.R. at 352. The Seventh Circuit has discussed four factors that may assist in discerning whether the obligation in question was intended by the parties or the divorce court to serve as support:

(1) whether the settlement agreement includes provision for payments to the ex-spouse;

(2) whether there is any indication that the hold-harmless provision was intended

to balance the relative incomes of the parties;

(3) whether a hold-harmless clause is in the midst of provisions allocating property; and

(4) whether a hold-harmless provision describes the character and method of payment.

*In re Coil,* 680 F.2d at 1172; *In re Maitlen,* 658 F.2d 466, 469 (7th Cir.1981); *In re Woods,* 561 F.2d at 28–29.[1] However, these factors are not exhaustive, and the Court may consider other evidence in the record to determine intent. *In re Coil,* 680 F.2d at 1172; *In re Haas,* 129 B.R. at 536.

■ 8. Ms. Bradaric alleges that the Debtor's obligations to pay $125 per month in child support and to maintain life and health insurance are nondischargeable, and the Debtor concedes these points. Accordingly, the Court finds that these obligations, whatever they may amount to from time to time, are nondischargeable under § 523(a)(5). Judgment will enter accordingly. Any issues as to amounts due thereon will of course be determined by the state court.

9. Ms. Bradaric further asserts that Debtor's obligations to pay the debts owed to Household Finance retail, Household Finance VISA, Gary–Wheaton Bank, and Hedges Clinic, as well as his obligation to indemnify her for any debt arising out of Debtor's purchase and possession of the Ford truck, are nondischargeable. She contends that these obligations are in the nature of support and maintenance because she would be unable to support herself and their child if her income is garnished for those debts that Debtor is obligated to pay.

10. Debts may be found nondischargeable if other provisions of support together with the ex-spouse's earnings would be insufficient to maintain daily necessities. *In re Haas,* 129 B.R. at 537; *In re Calisoff,* 92

B.R. at 354; *In re Marriage of LaShelle,* 572 N.E.2d 726, 731 (2nd Dist.1991).

■ 11. The evidence proffered by Ms. Bradaric's counsel to prove that she will be unable to support herself or the child if Debtor does not fulfill his obligations is: (1) the temporary support Order directed Debtor to pay $190 a week in child support, (2) that award was reduced to $125 a week in exchange for Debtor's promise to convey his interest in the marital residence to Ms. Bradaric, (3) there was little if any equity in the residence when it was sold two months later, and (4) the credit card debts listed in the settlement agreement total $7,228.06.[2]

12. Ms. Bradaric's agreement to receive less child support in return for the quitclaim deed could tend to show that conveyance of the residence was in the nature of support, but that is irrelevant here. Debtor did fulfill his commitment to convey his interest in the residence to Ms. Bradaric, and the present Adversary case deals with different obligations. The other limited facts established in the very sparse record before the Court are not helpful. They do not show the financial condition of Mrs. Bradaric when the Dissolution Judgment was entered. Her counsel has not offered any evidence to show that her income at the time of the judgment was low or that she was unable or barely able to support the child on her income plus child support payments. The burden here is on her to prove that the asserted debts were nondischargeable. In the absence of more evidence, the Court cannot infer from the proffered evidence that the credit cards debts in question were intended as child support, there being no adequate evidence as to plaintiff's income or financial health.

13. The Settlement Agreement itself tends to indicate that the obligation to pay these questioned debts is in the nature of a division of property. In Article VII, the

1. For a comprehensive discussion of this and other possible factors to consider, *see In re Hill,* 133 B.R. 126 (Bankr.N.D.Ind.1989).

2.

| Household Finance Visa | $3,411.33 | Total: | $7,228.06 |
| Gary–Wheaton Bank | 3,816.73 | | |

Bradarics represented that they were each able to support themselves and waived any claim of maintenance against one another. Also, the Agreement places all child support provisions in Article II, and all the other relevant Articles discuss the division of property. Finally, there is no evidence to indicate that the "save harmless" clauses in the agreement were meant to balance the incomes of the parties. As previously noted, the Bankruptcy Judge is not bound to accept labels used in marriage dissolution agreements. However, the language and format of the Agreement is certainly evidence of intent of the parties and the state court, particularly when plaintiff's counsel failed to present any evidence to contradict or explain that language or the circumstances surrounding it.

14. Ms. Bradaric has not met her burden of proof to show that Debtor's obligations to pay any debts owed to Household Finance retail, Household Finance VISA, and the Gary–Wheaton Bank were intended to be in the nature of child support. These obligations are therefore dischargeable.

15. Ms. Bradaric makes the same claims concerning Debtor's obligation to pay half the debt owed to Hedges Clinic. However, the record concerning this debt is even more sparse, since no evidence has been submitted concerning the identity of the Hedges Clinic or the nature of the debt owed to it. For the same reasons given above, Ms. Bradaric has also failed to meet her burden of proof to show that Debtor's obligation to pay the Hedges Clinic bill is in the nature of support.

16. It is difficult to see how Ms. Bradaric could be held liable for any debt arising out of the purchase of the 1990 Ford pickup truck. It has not been shown that she was a signatory to the purchase or accompanying loan agreement, and it is doubtful that she was since she had been separated from Debtor for about six months when he made the purchase,[3] and the child support due under the Temporary Support Order

was in arrears around the time he made the purchase. *See* Stip.Ex. A., Art. II, ¶ 3 (payments were in arrears at time of Judgment).

■ 17. Furthermore, Ms. Bradaric would not be liable under Illinois law due to her status as Debtor's wife. The Illinois Family Expense Statute provides in relevant part,

(a)(1) The expenses of the family and the education of the children shall be chargeable upon the property of both husband and wife, or of either of them, in favor of creditors therefor, and in relation thereto they may be sued jointly or separately.

(2) No creditor, who has a claim against a spouse or former spouse for an expense incurred by that spouse of former spouse which is not a family expense, shall maintain an action against the other spouse or former spouse for that expense. . . .

Ill.Rev.Stat. ch. 40, ¶ 1015(a). One spouse will be liable for the family expenses incurred by the other spouse while their divorce is pending even if they are living separately at the time. *St. Mary Nazareth Hospital v. Kuczaj*, 174 Ill.App.3d 268, 274, 123 Ill.Dec. 745, 749, 528 N.E.2d 290, 294 (1st Dist.1988). A family expense is defined as "one which contributes to the welfare of the family and benefits or maintains its integrity." *Peoples Gas Light & Coke Co. v. Illinois Commerce Comm.*, 222 Ill.App.3d 738, 165 Ill.Dec. 162, 164, 584 N.E.2d 341, 343 (1st Dist.1991), citing *Carson Pirie Scott & Co. v. Hyde*, 39 Ill.2d 433, 235 N.E.2d 643 (1968).

The truck was purchased by Debtor shortly before the divorce and was then and now is in his exclusive possession. It only benefitted Debtor and did not on the record here contribute to the welfare of the family. Therefore, the liability arising from the purchase and possession of the truck is not likely a family expense, and ¶ 1015(a)(2) would likely bar a creditor from

---

**3.** Over six months elapsed between the date the Temporary Support Order was entered and the date the Judgment was entered, and this vehicle was purchased shortly before the Judgment was entered.

proceeding against Ms. Bradaric to collect on the truck loan.

■ 18. Since Ms. Bradaric is not likely to be liable for debts related to the truck, there may be nothing for Debtor to indemnify and may be no debt to be discharged. However, the creditor who sold the truck is not before the Court and is not bound by this Court's perceptions. This issue has been presented out of plaintiff's excess of caution, and plaintiff is entitled to a ruling thereon. From the evidence, it is sufficiently apparent that the debt arising out of the purchase of the truck is so large and onerous that Ms. Bradaric would be unable to support herself and a child if she was forced to pay this debt, even if she has an income sufficient to meet ordinary household needs. Therefore, Debtor's obligation in the Judgment to pay the debt arising out of the purchase of the truck was intended in the nature of indirect child support. If Ms. Bradaric could in some way be found liable on this debt, then Debtor's obligation to indemnify her is nondischargeable.

## CONCLUSION

By separate order the Court enters final judgment of nondischargeability in favor of Plaintiff Mary Bradaric as to Debtor's obligations to provide child support and to provide life and health insurance for benefit of their child. Judgment of nondischargeability of Debtor's duty to indemnify her is further entered in her favor to the extent that she is or may be liable for any debts arising out of the purchase of the 1990 Ford pickup truck. However, judgment is entered in favor of Debtor James Bradaric as to his obligations to pay the debts due to Household Finance retail, Household Finance VISA, the Gary–Wheaton Bank, and the Hedges Clinic.