In re Cony C. WANG, Debtor.

Everspring Enterprises, Inc. and Joseph Sun, Plaintiffs,

v.

Cony C. Wang, Defendant.

Bankruptcy No. 98–41305–S.
Adversary No. 98–4096.

United States Bankruptcy Court,
E.D. Texas,
Sherman Division.

March 8, 2000.

Gregg Gutman, Dallas, TX, for plaintiffs.

Paul C. Allred, Dallas, TX, for defendant/debtor.

### MEMORANDUM OPINION

DONALD R. SHARP, Bankruptcy Judge.

NOW before the Court is the Complaint for Determination of Dischargeability and Objection to Discharge filed by Everspring Enterprises, Inc. and Joseph Sun, the

Plaintiffs in this adversary. The Court considered the pleadings filed and the evidence adduced at trial. This opinion constitutes the Court's findings of fact and conclusions of law required by Fed. R.Bankr.Proc. 7052 and disposes of all issues before the Court.

## FACTUAL AND PROCEDURAL BACKGROUND

Cony C. Wang[1], the Debtor was a part owner, president and one of two directors of Everspring Enterprises, Inc. ("EEI"), a food wholesaler and distributer, between July 1992 and August 1995. The other partner and director was Long Shy Chen. There were no other officers or directors of EEI during that period. Joseph Sun, Co–Plaintiff herein ("Sun"), was a minority shareholder in EEI at that time. However, for a period prior to 1992, Sun had served as EEI's president and Wang was a minority shareholder. On August 14, 1995, Wang and Sun entered into and executed a Stock Sale Agreement pursuant to which Wang sold all of his ownership interest in EEI to Sun and Sun paid $250,000 to Wang. A few days later, EEI's account was frozen by Texas Central Bank in connection with a judgment debt. The Stock Sale Agreement forms the basis of this dispute, because Sun claims Wang used it to perpetrate fraud, failing to disclose hundreds of thousands of dollars in existing liabilities and payment by the corporation of bonuses totaling $64,000.00 (after taxes) to Wang prior to the consummation of the sale. Sun also avers that Wang breached his fiduciary duty to EEI via certain disputed transfers of assets during the period Wang completely controlled EEI. Thereafter, Sun obtained a judgment against Wang and succeeded in having a post-judgment receiver appointed. Sun prosecuted or had a trustee prosecute contempt

actions against Wang. Ultimately Wang filed for bankruptcy relief[2] and Sun and EEI filed the instant adversary proceeding objecting not only to the dischargeability of Wang's judgment debt as claimed by them, but also to this Court's entry of an order granting Wang a discharge under the Code. Sun and EEI have valued the damages to EEI at approximately $587,-110.41 and seek this Court's liquidation of their claims including interest and punitive damages. The matter came on for hearing pursuant to regular setting and, thereafter, was taken under advisement.

## DISCUSSION

The Complaint filed by Sun and EEI seeks this Court's entry of an order denying Cony C. Wang a discharge under 11 U.S.C. § 727(a)(2)(A), (a)(3), (a)(4) and (a)(5). Alternatively, the Complaint filed by Sun and EEI seeks this Court's entry of an order liquidating their claims against Wang and holding same non-dischargeable under 11 U.S.C. §§ 523(a)(4) and (a)(6).

11 U.S.C. § 727 provides: (a) The court shall grant the debtor a discharge, unless—[ . . . ]

> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
>
> > (A) property of the debtor, within one year before the date of the filing of the petition; . . .
>
> (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and

**1.** Wang came to the United States in 1975 from Taiwan. He received up to a high school education in Taiwan. He drove a cab, worked in restaurants and was a crewman on a boat. He also served 3 years in the army in Taiwan. He started EEI in 1981; in 1982

Mr. Sun approached Wang to join EEI which was similar to Sun's business, Evergreen, in Oklahoma.

**2.** A Chapter 13 proceeding filed before this case survived only briefly and was dismissed.

papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account; . . .

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities; [ . . . ].

*11 U.S.C. § 727.* Under Rule 4005 of the Federal Rules of Bankruptcy Procedure, the burden of proof is on the party objecting to the discharge. Moreover, 11 U.S.C. § 727 is to be construed liberally in favor of the debtor and strictly against the creditor in furtherance of the "fresh start" policy. *E.g., see In re Adlman,* 541 F.2d 999, 1003 (2nd Cir.1976). "In order for a debtor to be denied a discharge under § 727(a)(2)(A), the objector to the discharge must demonstrate by a preponderance of the evidence that the debtor (1) transferred, removed, concealed, destroyed or mutilated, (2) property of the estate, (3) within one year prior to the bankruptcy filing, (4) with the intent to hinder, delay or defraud a creditor." *In re Brown,* 108 F.3d 1290, 1293 (10th Cir.1997). Congress chose the preponderance standard to govern determinations under 11 U.S.C. § 727(a)(4), which denies a debtor the right to discharge altogether if the debtor has committed a fraud on the bankruptcy court. See H.R.Rep. No. 95–595, p. 384 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6340 ("The fourth ground for denial of discharge is the commission of a bankruptcy crime, though the standard of proof is preponderance of the evidence"); S.Rep. No. 95–989, p. 98 (1978),

U.S.Code Cong. & Admin.News 1978, p. 5884. The standard of proof for allegations under § 523, like that of allegations brought under § 727, is by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991); *In re Townsley,* 195 B.R. 54 (Bkrtcy.E.D.Tex.1996). Should an objecting party establish a prima facie case based upon the grounds recited under § 727, the burden shifts to the debtor. *In re Hawley,* 51 F.3d 246 (11th Cir.1995); *In re Townsley,* 195 B.R. 54, 64–65 (Bkrtcy. E.D.Tex.1996).

■ Sun and EEI (referred to hereinafter jointly as "Plaintiffs") allege that Wang should be denied his discharge under § 727(a)(2)(A)[3]. The period of time to be scrutinized is the one year period preceding the filing of the petition on April 13, 1998. Accordingly, the period includes the period following entry of the Post–Judgment Order for Turnover Relief and for the Appointment of a Receiver in the 192nd District Court, Dallas County, Texas, Cause No. 96–04622. Sun and EEI allege, as basis for denial of the discharge, that Wang failed to co-operate with the receiver appointed in the state court action and ultimately filed his ill fated Chapter 13 bankruptcy. In particular, the Plaintiffs allege that Wang failed to explain the disappearance of the "bonus" money that he collected from Everspring in 1995 and earlier. The "bonus" money does not fall into the look-back period defined under the statute. Even if the statutorily defined one-year period were to be tolled as a result of the Chapter 13 case which endured from May 27, 1997 through March 17, 1998, it would not encompass the 1995 "bonus" or any of the bonuses (issued in stock or otherwise) during the period of 1992 until 1995 complained of by Plaintiffs.

**3.** § 727(2)(A) provides for the court to grant the debtor a discharge unless:

"the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed,

mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition; . . .".

The Court considered seriously allegations of gratuitous transfers of thousands of dollars alleged by Plaintiffs to have been paid by Wang out of corporate assets. The Court has scrutinized the copies of checks placed into evidence cumulatively as Plaintiffs' Exhibit 30 as well as Plaintiffs' Exhibit 5.[4] As evidence in support of the Plaintiffs' position respecting fraud or defalcation, the checks suffer from major disabilities. They are all written on what appears to be the personal account of Cony C. Wang and his wife Jean Wang. A few were written by Cony C. Wang out of a joint account with Yuh–Ying Sun (Mrs. Joseph Sun). There is no evidence that the former checks were drawn using funds of EEI. There is no evidence that the latter were drawn without the knowledge or permission of Mr. Sun or that they were drawn upon specifically corporate funds. As to the § 727(a)(2) issue respecting transfers of property of the *debtor*, funds drawn on the Wangs' joint account would be subject to examination, but for the following: like the bonuses, such transfers, (assuming, *arguendo*, the funds are traceable to corporate assets) do not fall within the one year statutorily defined period.

Plaintiffs aver that Wang used EEI's assets to assist in funding a poultry processing business, Scion, to his own benefit. Wang admits he wanted to open a chicken processing plant to obtain chicken for EEI's clientele because chicken was difficult to obtain. The documents surrounding the poultry processing transactions (admitted cumulatively as Plaintiff's Exhibit 5) fail to support Plaintiff's allegations of some nefarious business transactions pursuant to which Wang either siphoned off assets of EEI or hid personal assets in an attempt to hinder or delay his creditors. Unrebutted testimony showed that Wang's foray into poultry processing saved EEI $0.05/lb. There is no proof that he used it to transfer or dispose of assets of the debtor (or of EEI) within the one year statutorily set period.

Finally, the Court reviewed the evidence offered respecting the transfer of a truck by Wang into his wife's name. Wang and his wife, though separated at the time of the trial, were married for approximately 17 years. First, the Court must note that under the community property laws of Texas, the truck must be presumed to be community property until such presumption is rebutted.[5] Indeed, it was scheduled as such in 1997. Hence, Wang merely transferred his one-half interest in the truck to his wife. Wang's testimony revealed that the truck was purchased in approximately 1992 or 1993 using a trade in of an older truck titled in Wang's name (not in EEI's name). The transfer to Wang's wife occurred in 1995, well outside the one-year statutory limit for this bankruptcy. *See* Deposition of Cony Wang (Plaintiff's Exhibit 30, page 11). There is no evidence before this Court to support Plaintiffs' contention that the transfer was done to defraud his creditors; the unrebutted evidence reveals that Mr. Wang

4. Plaintiff's Exhibit 5 was a binder of documents including purported summaries of Scion Corporation's transactions, certain 1994 leases between EEI and, individually, Deverell Foods, Inc., Sierra Foods, Inc., and Alan Acceptance Corp., and North Texas Equipment Credit Corp.,, a guaranty also dated 1994 executed by Cony Wang on behalf of EEI, invoices and uncertified copies of checks in connection with the lease transactions, a lease between Scion and North Texas Equipment Credit Corp., a creditor in this case, a 1994 credit application in the name of EEI signed by Cony Wang, 1994 documentation on a lease between Colonial pacific Leasing and EEI, and an undated, unfiled UCC Financing Statement purportedly signed by Cony Wang on behalf of Scion Corporation respecting equipment.

5. There is a presumption under Texas law, that property acquired by either spouse, during marriage, is community property, Tex. Fam.Code Ann. § 3.002 (Vernon 1998). To overcome this presumption, "the party asserting separate ownership must clearly trace the original separate property into the particular assets on hand during the marriage." *Cockerham v. Cockerham*, 527 S.W.2d 162, 167, (Tex.—1975).

transferred the truck into his wife's name to resolve a marital dispute. *See Plaintiffs' Exhibit 30, page 11.*

Next the Court must consider the proceeds of the trucking business during the one-year period prior to the filing of the petition. The question is not whether Wang received proceeds; it is whether he attempted to hide them from his creditors or otherwise defraud his creditors. Wang owned and drove for the business which involved hauling dry goods to California and returning to Texas with loads of produce. Wang's wife supplied the truck and handled the accounts according to Wang's testimony. Wang testified that he gave the proceeds of his driving jobs to his wife and used the proceeds to cover expenses of the truck. His testimony was not rebutted. There was no credible evidence adduced that the proceeds of Wang's trucking business, which were not quantified for the Court by the parties, but have been roughly estimated to be $2,400/month based upon Wang's 1997 Schedules I and J ($10,000 a month gross income less $7,600/month business expenses), or, alternatively $500.00 each trip, $300 of which he paid to his wife for the children [*See Plaintiff's Exhibit 30, page 15, ll. 1–8.*], were used for anything other than current living expenses for the Wangs and their three children. There is no reliable evidence that Mr. Wang secreted them to defraud, hinder or delay his creditors.

■ Sun and EEI also seek this Court's denial of entry of an order of discharge for Wang pursuant to § 727(a)(3) asserting that Wang "has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, with no justification". In particular, the Plaintiffs allege that Wang failed to produce business records and financial information. Wang claims to have produced everything that he had. The Plaintiffs' evidence reflects that records were produced at the deposition [*See Plaintiff's Exhibit 30, page 11, ll. 1–8.*] and that Mr. Wang explained that his estranged wife was in possession of additional records that had been requested, but that she had refused to tender them to him. The record of the deposition also reflects that Mr. Wang asked Mrs. Wang for same. [*See Plaintiffs' Exhibit 30, page 77, l. 13.*] No testimony or document produced directly, credibly supports the allegations under Subsection (3). Joseph Goldstein, an attorney appointed by the state as receiver to help collect Sun's judgment against Wang testified to the history of his collection attempts, to wit that Wang failed to comply with the state court's May 14, 1997 order, rather Wang filed his Chapter 13 on May 27, 1997. As a result, Mr. Goldstein suspended his collection actions. Following dismissal of the Chapter 13, Mr. Goldstein, resumed his efforts. He testified that Mr. Wang refused to cooperate and that upon filing a motion to hold Wang in contempt, Wang filed the voluntary petition initiating the instant proceeding. The Court acknowledges that the burden of proving a negative, such as failure to keep records is more difficult than proving a positive act, such as destruction of records. The Code contemplates businesses that depend upon records, ledgers checkbooks and documentation. This Court, like many other bankruptcy courts, hears testimony regularly from debtors that have not conducted their businesses in such fashion. It is not an issue of first impression. In *Bartolotta v. Lutz*, 485 F.2d 227 (5th Cir. 1973), the Fifth Circuit Court held that a referee erred in denying a debtor's discharge based upon failure to keep books and records of his transactions in the seasonal Christmas tree vending business, because the lower court should have heard evidence of any special circumstances relevant to the debtor's case. In *Gaudet v. Cowen*, 297 F.2d 227 (5th Cir.1961), the Fifth Circuit affirmed a District Court ruling denying the debtor a discharge, where the debtor kept no record of his large scale gambling activities, but was employed as

Chief Deputy Assessor of Jefferson Parish, Louisiana. In *Texas National Bank of Beaumont v. Edson*, 100 F.2d 789 (5th Cir.1939), [*reh. denied*], the appellee debtor testified that at no time did he ever undertake to keep a set of books on his business operations. *Ibid.* at 790. The Court ruled that the grant of the discharge was dependant upon the Court finding that failure to keep books and records was justified under all the circumstances of the case. The Court has considered the evidence and it has also taken into consideration Wang's lack of formal training and education in business as well as his testimony that he produced whatever he had available. In this case, the debtor has not failed to produce records, as alleged; he has failed to produce records of a type and quality that would satisfy Plaintiffs. To the extent Mr. Wang has not produced records, he has explained his failure to produce them plausibly to this Court. (e.g. His deposition shows that he produced records of the trucking expenses and other records at the deposition. Checks and bank documents not produced were in possession of his estranged wife. Wang testified under oath that he had never prepared a financial statement. It was apparent that he was unclear as to what a financial statement is, confusing it with a bank account. *See Plaintiff's Exhibit 30.*). The Court simply has no credible evidence before it that would justify a finding that under the circumstances of the case Wang's failure to keep additional records from those produced was not justified or that he deliberately destroyed or concealed records.

Plaintiffs included in the Complaint an allegation under 11 U.S.C. § 727(a)(4) ["the Court shall grant a debtor a discharge unless the debtor knowingly and fraudulently, in or in connection with the case, made a false oath or account."] The argument was not developed at trial and there was no evidence offered in support of this allegation at the trial.[6]

6. Cross-examination of Wang by Plaintiff's counsel included a question pertaining to statements made at the § 341 meeting. Mr.

▮ Plaintiffs sought to show this Court that Wang should be denied his discharge pursuant to 11 U.S.C. § 727(a)(5), for his failure to explain satisfactorily, before determination of denial of discharge under such section of the Code, any loss of assets or deficiency of assets to meet the debtor's liabilities. The debtor has explained satisfactorily to this Court the disposition of all assets about which the Plaintiffs raised doubts. He testified consistently both at the deposition and at trial as to the disposition off the chicken processing equipment, as to the bonuses, as to the transfer of the truck and as to attempts to pay his creditors. Plaintiffs have failed to meet the burden required on all of their allegations pertaining to denial of the Debtor's discharge under 11 U.S.C. § 727 et seq.

▬ The Plaintiffs plead, in the alternative, that this Court should enter an order holding their claims against Wang to be non-dischargeable pursuant to the provisions of 11 U.S.C. § 523(a)(4) and § 523(a)(6). Under 11 U.S.C. § 523 entitled "Exceptions to discharge":

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> > (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny; ... [or]
> >
> > (6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

*11 U.S.C. § 523(a).* As stated hereinabove, the burden is on the objecting party. The Complaint recites allegations of embezzlement and conversion of corporate assets. The bases for same are the judgments awarded to Sun and EEI in the state court action.

In order to prevail in a dischargeability action under § 523(a)(4), a plaintiff must

Wang did not remember and the line of questioning was dropped. A transcript of the § 341 meeting was not included in evidence.

prove: (1) that the debt arose while the debtor was acting in a fiduciary capacity and (2) that the debt was incurred by fraud, defalcation, embezzlement, or misappropriation. *In re Wolfington*, 48 B.R. 920, 923 (Bkrtcy.E.D.Pa.1985). It is well established that a corporate officer is a "fiduciary" of the corporation within the meaning of § 523(a)(4). *Id.* at 924; *In re Cowley*, 35 B.R. 526, 528 (Bkrtcy.D.Kan.1983). It is also clear that "defalcation" is a broader term than embezzlement or fraud. It can be a mere deficit resulting from the debtor's misconduct, even though he derived no personal gain therefrom. *Id.* at 529; *Matter of Moreno*, 892 F.2d 417, 421 (5th Cir.1990).

*In re Townsley*, 195 B.R. 54, 63 (Bkrtcy. E.D.Tex.1996). The documents placed into evidence before this Court do not include any of the pleadings, briefs or judgments from the underlying state court actions allegedly prosecuted by Mr. Sun and EEI. This Court considered the evidence offered and admitted respecting the judgments because neither party denied their existence. Wang has not denied that he was a corporate officer during the period of July 1992 through August 1995. However, there is no credible evidence in support of Plaintiff's allegations under § 523(a)(4) or (6). No viable evidence was offered upon which this Court can find even indicia of willful or malicious injury. A significant portion of the trial was devoted to Wang's attempt to develop a sideline business of poultry processing, Scion. The evidence does not demonstrate the requisite intent to support an allegation of fraud, embezzlement or the lesser charge of misconduct. There is no evidence of transfers of assets of EEI to any entity, by Wang, without the knowledge of the other officer of EEI. In addition, there is unrebutted testimony that the bonuses complained of by Plaintiffs were used to pay for the poultry processing equipment. Plaintiffs acknowledge the use of Wang's personal bonuses to that end.

Plaintiffs allege that Wang "placed one or more phantom employees on the payroll of the company". The evidence absolutely fails to support such allegation. The Complaint states that Wang placed phantom employees on the payroll and obtained false immigration papers for a bribe. This Court concludes the latter allegations were put into the pleading for inflammatory purposes. Absolutely no evidence was introduced in support of such allegations.

The evidence before this Court fails to support allegations that Wang transferred EEI's corporate funds to any person for an improper purpose. All copies of checks submitted into evidence are drawn on Wang's personal account with his spouse or his account with Mr. Sun's wife. The sole inference which can be drawn from the checks written out of the former are that, for whatever reason, Wang was paying personal funds to the benefit of EEI. Any funds drawn on the latter account, if indeed such account was EEI's account and not a personal account, fail to demonstrate fraud, defalcation or improper purpose.

Wang was sole shareholder in Scion Corporation at one time. Evidence presented to this Court reflecting Scion's corporate structure is scant. Plaintiffs attempted to show the Court that Wang used EEI's funds to benefit Scion and, thereby, himself. Wang testified, however, that Scion was an EEI entity and that EEI was solely responsible for Scion. Moreover, Wang testified that the chickens processed by Scion were owned by EEI, returned to EEI after processing and saved EEI $0.05/lb. His testimony stood unrebutted. Scion loaned funds to North Texas Credit in 1994. There is no solid evidence to indicate that North Texas Credit and North Texas Equipment Credit Corp., from whom EEI leased equipment, are the same entity or that they are controlled by or benefit Wang whatsoever. Assuming, arguendo, that they are the same legal entity, the evidence fails to show that the equipment leased did not

benefit EEI even if the transactions were not conducted "at arm's length".

■ A defalcation is a willful neglect of duty, even if not accompanied by fraud or embezzlement. *Central Hanover Bank & Trust v. Herbst*, 93 F.2d 510 (2nd Cir. 1937). In *Matter of Moreno, Supra* at 421, the Fifth Circuit affirmed a bankruptcy court judgment rendering debts of Moreno non-dischargeable where he directed transfer of nearly $200,000 to himself and companies in which he owned interests of 50% or more from a company in which he served in a fiduciary capacity. However, *Moreno* may be distinguished from the case before this Court insofar as the courts found no portion of the debts of Moreno were repaid and no corporate purpose was furthered by the transfer. *Ibid.* As the Fifth Circuit noted, whether the money served Moreno personally was significant but not "necessarily determinative." In the case at bar, Wang paid EEI for the equipment and credit advanced [7] and the Court finds a clear corporate purpose to the development of the poultry processing business. The transaction without further evidence does not rise to the level of fraud or defalcation proposed by Sun and EEI.

Finally, the Complaint seeks a liquidation of claims. Insufficient evidence is before this Court upon which it can calculate Plaintiffs' claims.

### CONCLUSION

The nucleus of facts is not sufficient to raise a serious doubt in the mind of the trier of fact as to whether Cony Wang developed a willful scheme to defraud his creditors and the shareholders of EEI. Nor have the Plaintiffs proven that Wang participated in misconduct justifying the relief sought. Based upon the testimony, the documentary evidence and the record in this case, the Court can only find that the debtor, who was not trained in business or economics, attempted through in-

dustry and diversification to enhance EEI and its opportunities through the complained of transactions. The standard of proof for allegations under § 523 and under § 727, is by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *In re Townsley*, 195 B.R. 54 (Bkrtcy.E.D.Tex. 1996). Should an objecting party establish a prima facie case based upon the grounds recited under § 727, the burden shifts to the debtor. *In re Hawley*, 51 F.3d 246 (11th Cir.1995); *In re Townsley*, 195 B.R. 54, 64–65 (Bkrtcy.E.D.Tex.1996). This Court finds that the evidence before it is insufficient to shift the burden and, likewise, insufficient to meet the Plaintiffs' burden of proof. If Cony C. Wang is other than the "honest but unfortunate debtor" of which the *Grogan* court speaks, it has not been shown. *Grogan v. Garner, Supra*, citing to *Local Loan Co. v. Hunt*, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934). Therefore, the Plaintiffs have failed to meet their burden and the relief requested by the Plaintiffs, both monetary and non-monetary, must be denied. An order will be entered accordingly.

---

**7.** There is circumstantial evidence of funds used which was not persuasive; Wang testified that EEI's good credit was used to enable Scion to obtain equipment.