In re Jon F. HOSLER, Debtor.

Vicki J. Klingler, Plaintiff,

v.

Jon F. Hosler, Defendant.

Bankruptcy No. 03–74471.
Adversary No. 03–7346.

United States Bankruptcy Court,
C.D. Illinois.

May 17, 2004.

Kent A. Rathbun, Decatur, IL, Darren L. Besic, Batavia, IL, Erich M. Ramsey, Alice Whitten, Arlington, TX, for creditors.

Richard W. Hopp, Decatur, IL, for debtor.

## OPINION

LARRY L. LESSEN, Bankruptcy Judge.

This matter came before the Court for trial on March 5, 2004, on Plaintiff's two-count adversary complaint. At the conclusion of the trial, the matter was taken under advisement by the Court. The parties have since submitted their post-trial memoranda.

Plaintiff is the former wife of the Debtor. The parties were divorced in Macon County, Illinois pursuant to a Judgment of

Dissolution of Marriage entered on July 7, 2003.

On September 24, 2003, Debtor filed his voluntary petition under Chapter 7 of the Bankruptcy Code. On December 5, 2003, Plaintiff filed her two-count adversary complaint. In Count I, Plaintiff seeks the denial of Debtor's discharge in bankruptcy. Plaintiff contends that the Debtor transferred, removed, and/or concealed property within the year before the date of the filing of the petition, as prohibited by Section 727(a)(2)(A) of the Bankruptcy Code. Plaintiff further contends that the Debtor concealed, destroyed, or failed to keep or preserve records from which his financial condition and business transactions might be ascertained, as prohibited by Section 727(a)(3) of the Bankruptcy Code. Finally, Plaintiff contends that Debtor knowingly and fraudulently made false oaths or accounts in connection with his bankruptcy, as prohibited by Section 727(a)(4)(A) of the Bankruptcy Code.

In Count II, Plaintiff seeks a finding that Debtor's obligation to pay her attorneys fees incurred during the parties' divorce proceeding is nondischargeable maintenance and/or support pursuant to Section 523(a)(5) of the Bankruptcy Code. Plaintiff also contends that an obligation for Debtor to pay Plaintiff a certain sum of money arising from the Judgment of Dissolution of Marriage is a nondischargeable debt under Section 523(a)(4) of the Bankruptcy Code.

A fairly extensive dissertation of background is required to understand this case. Debtor formerly worked as an electrician for A.E. Staley Manufacturing Co. ("Staley") in Decatur, Illinois. Shortly after retiring from Staley, he was asked to return as an independent contractor at the Staley plant in Decatur. Debtor and Plaintiff formed a SubChapter S corporation known as Midwest Instrumenta-tion/Electrical Services, Inc. ("MIES"). Although the corporation issued no shares of stock, Debtor's and Plaintiff's income tax returns for the relevant years indicate that Debtor and Plaintiff each owned one-half of MIES. The business purpose of MIES was to supply labor to Staley. MIES paid the labor an hourly wage and, in turn, Staley reimbursed MIES for the labor costs and, in addition, paid MIES a 20% premium.

Prior to the separation of the parties on or about March 1, 2001, all of the financial matters of MIES were handled by Plaintiff. All of the corporate and financial records of MIES were kept by Plaintiff in the former marital residence of the parties. Immediately after the marital separation, Plaintiff obtained an Order of Protection through the Circuit Court of the Sixth Judicial Circuit, Macon County, Illinois against the Debtor. The Order of Protection, *inter alia*, prohibited any communication between the Plaintiff and the Debtor and gave the Plaintiff the exclusive use and possession of the former marital residence and the exclusive possession of all of the business and financial records of MIES.

Prior to the parties' separation, Debtor did not pay himself a salary, although he did take money out of the business to pay his personal expenses. After the parties separated, Debtor began paying himself a salary and continued to do so until MIES was closed.

Plaintiff had three children, none of which was a natural child of the Debtor. The oldest was aged four at the time the Plaintiff and Debtor were married. Shortly after the separation of Plaintiff and Debtor, the oldest child of Plaintiff—Seth—began attending St. Louis University. During some of the school vacations, Seth resided with the Debtor. The Debtor made many contributions for Seth's tu-

ition, room, board, clothing, transportation, and living expenses, both at school and while he stayed in the residence of the Debtor. In addition to the foregoing, the Debtor purchased a computer for Seth for use in conjunction with his college education. On many occasions, the Debtor gave Seth cash to pay for his personal and educational expenses and made purchases with cash and credit cards for the benefit of Seth.

The middle child of Plaintiff—Shawn—moved in with the Debtor approximately two weeks after the Debtor and Plaintiff separated. With the exception of periods of time when Shawn lived in university housing, he continuously resided with the Debtor and was supported by the Debtor after the Debtor and Plaintiff separated. At the time Shawn moved in with the Debtor, he was in high school. Debtor provided all of Shawn's living expenses and paid his tuition at the private high school Shawn attended. After graduated from high school, Shawn has attended Millikin University. Debtor has contributed funds for room, board, tuition, books, expenses, clothing, and has also bought a computer for Shawn's use in college. Substantial portions of the money paid for Shawn's living and educational expenses were paid in cash and many personal and educational expenses for the benefit of Shawn were paid for by the Debtor with cash and with credit cards.

A Judgment of Dissolution of Marriage was entered on July 7, 2003. The Judgment provides in part as follows:

A. Plaintiff was to receive one-half of the net value of MIES as of May 8, 2003. Net value was to be determined by subtracting the liabilities from the assets; nothing was to be paid to Plaintiff for goodwill or the fact that MIES was a going concern.

B. Plaintiff waived any right to maintenance from the Debtor.

C. Debtor was to pay $10,000 toward Plaintiff's attorneys fees.

D. MIES was awarded solely to the Debtor.

After the entry of the Judgment of Dissolution of Marriage, Debtor decided to file a petition in bankruptcy. Debtor testified that he had reached the age of 68 years, he had retired and was receiving pension and social security income, his worsening arthritis was making it more difficult to work, and he felt pressured by the burdens of his personal and business obligations.

Debtor also decided to close MIES and he did so in September, 2003. Debtor transferred to his bookkeeper, Lois Lindsey, the sum of $8,000 for the purpose of paying accrued but unpaid wages of the employees of MIES. Debtor testified that he transferred the money to Ms. Lindsey because he did not want to leave the money in the account of MIES. He was afraid that if he issued checks on that account, the account might be garnished and the employees would not be paid.

Debtor did not sell MIES to Ms. Lindsey. Rather, Ms. Lindsey started a business under the name of B & L Electric and has continued providing services to Staley of the same nature as were provided by MIES. Debtor testified that he did not believe that MIES had any value over and above its assets since it was simply a service provider.

At the time Debtor terminated MIES, the assets of the corporation consisted of (i) an old truck worth about $500, (ii) a leased vehicle being used by Debtor in which there was no equity, (iii) miscellaneous small electrical testers having a value of no more than $500, and (iv) accrued

unpaid wages for services rendered by employees by MIES.

At Debtor's first meeting of creditors, Debtor turned over to his bankruptcy trustee a certified check in the amount of $19,000, representing receivables owed to MIES and paid by Staley. Debtor further advised the trustee that some funds remained in the MIES checking account. Debtor further disclosed at the hearing that he had turned over funds to Ms. Lindsey to pay the employees.

Debtor also revealed to the trustee at the hearing that he had a power boat and trailer which he had failed to include on his schedules. He has since turned over titles to the foregoing to the trustee.

Debtor did not list on his Statement of Financial Affairs under "gifts" the money paid to and spent on his stepchildren, Seth and Shawn. Debtor stated that he did not believe that money spent on his stepchildren was in the nature of a gift in that he had a long-time and ongoing *de facto* family relationship with them.

Many of the Debtor's purchases were in cash. During testimony, Debtor could not recall all of the cash transactions, however, he did provide an exhibit which detailed many of the cash purchases and which included numerous receipts.

Plaintiff contends that the Debtor has transferred, removed, or concealed substantial property of the Debtor within one year prior to filing his petition in bankruptcy. Specifically, Plaintiff contends that, in the year prior to filing bankruptcy Debtor (i) issued checks payable to "cash," withheld cash, and made or permitted ATM withdrawals in an aggregate of approximately $75,000, (ii) used a debit card to purchase items in excess of $21,500 at popular stores, (iii) made or authorized expenditures of over $10,000 for the payment of expenses or obligations of persons not dependent on Debtor, and (iv) transferred the assets of MIES for no consideration.

A discharge provided by the Bankruptcy Code is to effectuate the "fresh start" goal of bankruptcy relief. In exchange for that fresh start, the Bankruptcy Code requires debtors to accurately and truthfully present themselves before the Court. A discharge is only for the honest debtor. *In re Garman*, 643 F.2d 1252, 1257 (7th Cir.1980), *cert. denied*, 450 U.S. 910, 101 S.Ct. 1347, 67 L.Ed.2d 333 (1981). However, objections to discharge under 11 U.S.C. § 727 should be liberally construed in favor of debtors and strictly construed against objectors in order to grant debtors a fresh start. *In re Johnson*, 98 B.R. 359, 364 (Bankr.N.D.Ill.1988) (citation omitted). Because denial of discharge is so drastic a remedy, courts may be more reluctant to impose it than to find a particular debt nondischargeable. *See Johnson, supra*, 98 B.R. at 367 ("The denial of discharge is a harsh remedy to be reserved for a truly pernicious debtor.") (citation omitted). The plaintiff has the burden of proving the objection. *See* Fed. R.Bankr.P. 4005; *In re Martin*, 698 F.2d 883, 887 (7th Cir.1983) (the ultimate burden of proof in a proceeding objecting to a discharge lies with the plaintiff). The objector must establish all elements by a preponderance of the evidence. *In re Scott*, 172 F.3d 959, 966–67 (7th Cir.1999).

Pursuant to 11 U.S.C. § 727(a)(2)(A), a court will grant a debtor a discharge unless the plaintiff can prove by a preponderance of the evidence that the debtor:

> (2) with intent to hinder, delay or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be trans-

ferred, removed, destroyed, mutilated, or concealed—

 (A) property of the debtor, within one year before the date of the filing of the petition...

11 U.S.C. § 727(a)(2)(A).

 Denial of discharge under this section requires proof of actual intent to hinder, delay, or defraud a creditor. *In re Snyder*, 152 F.3d 596, 601 (7th Cir.1998); *In re Krehl*, 86 F.3d 737, 743 (7th Cir. 1996); *In re Smiley*, 864 F.2d 562, 566 (7th Cir.1989). "[P]roof of harm is not a required element of a cause of action under Section 727." *Id. at* 569. In determining whether a debtor has acted with intent to defraud under § 727, the court should consider the debtor's "whole pattern of conduct." *In re Ratner*, 132 B.R. 728, 731 (N.D.Ill.1991) (*quoting In re Reed*, 700 F.2d 986 (5th Cir.1983)). The issue of a debtor's intent is a question of fact to be determined by the bankruptcy judge. *See Smiley, supra*, 864 F.2d at 566. Actual fraudulent intent can be inferred from extrinsic evidence. *Id.; Krehl, supra*, 86 F.3d at 743; *In re White*, 63 B.R. 742, 744 (Bankr.N.D.Ill.1986) ("a debtor is unlikely to directly testify that his intent was fraudulent, the court may deduce fraudulent intent from all the facts and circumstances of a case"). "Thus, where the evidence on the intent question is such that two permissible conclusions may rationally be drawn, the bankruptcy court's choice between them will not be viewed as clearly erroneous." *Krehl, supra*, 86 F.3d at 744 (citation omitted). "Intent to defraud involves a material misrepresentation that you know to be false, or, what amounts to the same thing, an omission that you know will create an erroneous impression." *In re Chavin*, 150 F.3d 726, 728 (7th Cir.1998) (citations omitted).

 In order to prevail against the Debtor on her § 727(a)(2)(A) claim, the Plaintiff must prove two things: (a) the Debtor transferred, removed, destroyed, mutilated, or concealed property and, if proven, (b) that the Debtor had an intent to hinder, delay, or defraud his creditors.

 Plaintiff asserts that, in the year prior to filing bankruptcy, Debtor made substantial cash transactions, and that assertion is not disputed. Debtor also admitted making many ATM withdrawals, writing many checks for "cash," and utilizing credit cards for personal purchases and for gifts and expenses of Plaintiff's children. However, Debtor has provided an extensive accounting which demonstrates the use and purpose behind most of these purchases. It is clear that the Debtor was providing a substantial amount of financial support to Plaintiff's two sons. Among the expenditures were purchases of a computer for school, help with room, board, books, food, etc. Debtor also bought various gifts for his son, Kevin, and for Kevin's girlfriend.

 Debtor was able to recount some of the more substantial cash purchases. For example, Debtor admitted taking four withdrawals from the ATM totaling $500 on October 15, 2002. Debtor used the money to pay his mechanic for repairs to his truck; the mechanic requested payment in cash. Debtor also provided a written itemization and receipts which chronicle Debtor's spending for and on behalf of himself, his son, and his step-children. Based upon the evidence presented regarding Debtor's use of cash and checks payable to cash, the Court cannot find that Debtor did anything to hinder or defraud his creditors. Debtor's utilization of cash and checks payable to cash were consistent, with his previous spending patterns, and there is no evidence that he transferred or concealed the money in contravention of the Bankruptcy Code.

Plaintiff asserts that the Debtor gave the assets of MIES to Ms. Lindsey, along with the $8,000 in cash prior to initiating his bankruptcy proceedings. As indicated above, at the time of its termination, MIES had an old truck worth $500, a leased vehicle with no equity, miscellaneous small electrical testers worth no more than $500, and wages payable. The evidence demonstrated that none of the hard assets of MIES, other than the wages payable, was transferred to Ms. Lindsey. Debtor testified that he did not believe that MIES had any value over and above its minimal hard assets because it was a service business. Debtor's opinion was confirmed by the statement of his accountant, Tyson P. Cocagne, who stated that MIES had no value over and above its few assets:

> "[I]t appears fairly obvious from the 2000 and 2001 corporate returns that the business is a service business and merely generates income that would be the equivalent of earnings for services provided by [Debtor] and his team. In that the 'business' did not appear to generate income in any amounts greater than what would be a reasonable salary for [Debtor], there would appear to be no value that could be separately stated as specific to a 'marketable business entity'."

Plaintiff's Exhibit #19. This evidence was unrebutted.

The transfer of $8,000 cash to Ms. Lindsey by the Debtor was satisfactorily explained. At the time MIES ceased operating, wages were owed to its employees. Debtor feared that the cash he had in deposit to pay said wages might be garnished, as had happened to Debtor in the recent past. Debtor transferred the funds to Ms. Lindsey for the express purpose of paying said wages, and said wages were, in fact, paid. The Court cannot find anything untoward in Debtor's actions surrounding the cessation of operations of MIES. To the extent that the Debtor's Chapter 7 trustee concludes that the transfer was improper, he can and will pursue a turnover action for the benefit of the estate. In this instance, the Court finds no additional remedy merited. The record in this case falls well short of supporting the denial of Debtor's discharge under Section 727(a)(2).

■ Section 727(a)(3) of the Bankruptcy Code provides as follows:

> (a) the court shall grant the debtor a discharge unless–

>> (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

11 U.S.C. § 727(a)(3).

■ The statute places an affirmative duty on the debtor to create books and records accurately documenting his business affairs. *In re Juzwiak*, 89 F.3d 424, 429 (7th Cir.1996) ("The debtor has the duty to maintain and retain comprehensible records.") (citations omitted). To prevail under a complaint, the plaintiff must prove that the debtor failed to keep adequate records. *In re Martin*, 141 B.R. 986, 995 (Bankr.N.D.Ill.1992); *In re Calisoff*, 92 B.R. 346, 356 (Bankr.N.D.Ill.1988). "Section 727(a)(3) does not require proof of criminal or quasi-criminal conduct; rather, a transfer or removal of assets, a destruction or other wasting of assets, or a concealment of assets is all the trustee must prove." *Scott, supra*, 172 F.3d at 969. Intent is not an element of proof under § 727(a)(3). *Juzwiak, supra*, 89 F.3d at

430. ("creditors do not need to prove that the debtor intended to defraud them in order to demonstrate a § 727(a)(3) violation"). Every debtor has a duty to take reasonable precautions to maintain and preserve records of their financial transactions and affairs. *In re Carlson,* 231 B.R. 640, 654 (Bankr.N.D.Ill.1999), *aff'd sub nom Carlson v. Brandt,* 250 B.R. 366 (N.D.Ill.2000) (citation omitted), *aff'd* 263 F.3d 748 (7th Cir.2001). The purpose of § 727(a)(3) is "to make the privilege of discharge dependent on a true presentation of the debtor's financial affairs." *Scott, supra,* 172 F.3d at 969. This statute ensures "that trustees and creditors will receive sufficient information to enable them to 'trace the debtor's financial history; to ascertain the debtor's financial condition; and to reconstruct the debtor's financial transactions.'" *Juzwiak, supra,* 89 F.3d at 427–28 (*quoting Martin, supra,* 141 B.R. at 995) (citations omitted). The creditors and the trustee are not required to accept a debtor's oral recitations or recollections of his transactions; rather, to qualify for a discharge in bankruptcy, a debtor is required to keep and produce written documentation of all such transactions. *Id.* at 429–30. "Records are not 'adequate' if they do not provide the trustee or creditors with enough information to ascertain the debtor's financial condition and track his financial dealings with substantial completeness and accuracy for a reasonable period past to present." *Martin, supra,* 141 B.R. at 995 (citations omitted). The completeness and accuracy of a debtor's records are to be determined on a case-by-case basis, considering the size and complexity of the debtor's business. *In re Bailey,* 145 B.R. 919, 924 (Bankr. N.D.Ill.1992) (citations omitted). The court should consider the sophistication of the debtor, his business experience, and other relevant circumstances. *Calisoff, supra,* 92 B.R. at 356 (citation omitted).

Debtor has produced tax returns, receipts, bank statements, photocopies of checks, and other records. Debtor has also prepared and produced itemizations to demonstrate the nature and purpose of his many cash transactions. The Bankruptcy Code does not impose upon a debtor the rigorous recordkeeping responsibility which Plaintiff seeks to impose. In addition, to whatever extent Plaintiff's complaint is based upon the failure to produce books and records relating to MIES, those records—according to the evidence and unrebutted testimony—have been in the possession of the Plaintiff since the parties separated. Accordingly, there is no basis for denying Debtor's discharge under Section 727(a)(3).

Section 727(a)(4)(A) of the Bankruptcy Code provides as follows:

(a) The court shall grant the debtor a discharge unless–

(4) the debtor knowingly and fraudulently, in or in connection with the case–

(A) made a false oath or account.

The purpose of § 727(a)(4) is to enforce a debtor's duty of disclosure and to ensure that the debtor provides reliable information to those who have an interest in the administration of the estate. *In re Carlson,* 231 B.R. 640, 655 (Bankr. N.D.Ill.1999), *aff'd* 250 B.R. 366 (N.D.Ill. 2000), *aff'd* 263 F.3d 748 (7th Cir.2001). In order to prevail under § 727(a)(4), a plaintiff must establish five elements: (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew that the statement was false; (4) the debtor made the statement with intent to deceive, and (5) the statement related materially to the bankruptcy case. *In re Bailey,* 147 B.R. 157, 163 (Bankr.N.D.Ill. 1992). If made with the requisite fraudulent intent, a false statement, whether

made in the schedules or orally at a § 341 creditors' meeting, is sufficient grounds for denying a discharge provided it was knowingly made and is material. *In re Lunday,* 100 B.R. 502, 508 (Bankr.D.N.D. 1989). It is a debtor's role to consider the questions posed on the schedules and at the creditors' meeting carefully and answer them accurately and completely. *Id.* A debtor's petition and schedules constitute a statement under oath for purposes of a discharge objection under § 727(a)(4). *In re Gannon,* 173 B.R. 313, 320 (Bankr. S.D.N.Y.1994).

■ Plaintiff contends that Debtor's bankruptcy schedules contained false statements and meaningful omissions. Plaintiff asserts, *inter alia,* that Debtor omitted information about his 2003 income, that he made a false statements in claiming that he had made no gifts subject to disclosure, and that he had made no transfers of property subject to disclosure. Among Plaintiff's other allegations are that Debtor failed to schedule certain receivables, a boat and trailer, and a security deposit being held by a landlord.

The evidence demonstrated that there were several omissions and inaccuracies in Debtor's schedules. However, virtually all of the meaningful omissions and inaccuracies were corrected by the Debtor in his testimony at his § 341 meeting. The Debtor testified extensively about the omissions and inaccuracies in his schedules and he offered his explanations where appropriate. The Court carefully considered that testimony. The Court has ultimately found the Debtor to be a credible witness, and accepts the explanations which the Debtor has provided. This is not a case where the Debtor only decided to be forthright after becoming aware that his deceit had been uncovered. The Debtor corrected his mistakes voluntarily and on his own. Inasmuch as the Court finds that the Debtor lacked an intent to deceive, the Plaintiff cannot prevail on her § 727(a)(4) action.

■ Plaintiff next contends that Debtor's obligation to pay a portion of her attorneys fees incurred in the marital dissolution proceedings should be deemed nondischargeable as alimony and/or maintenance.

Section 523(a)(5) provides in relevant part as follows:

(a) A discharge under section 727... of this title does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse or child of the debtor for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement....

11 U.S.C. § 523(a)(5).

■ A debt owed to a former spouse or a debt to be paid to a third party in the nature of alimony, maintenance, or support pursuant to a divorce decree is nondischargeable in bankruptcy under 11 U.S.C. § 523(a)(5). *See In re Coil,* 680 F.2d 1170, 1171 (7th Cir.1982); *In re Maitlen,* 658 F.2d 466, 468 (7th Cir.1981); *In re Bradaric,* 142 B.R. 267, 269 (Bankr. N.D.Ill.1992). Obligations that arise as part of the division of marital property, however, are dischargeable under that section. *Coil, supra,* 680 F.2d at 1171.

■ The determination of whether a debt is in the nature of alimony, maintenance, or support is a matter of federal bankruptcy law rather than state law. *In re Haas,* 129 B.R. 531, 536 (Bankr.N.D.Ill. 1989); *In re Seidel,* 48 B.R. 371, 373

(Bankr.C.D.Ill.1984). In making this determination, the Court must look to the substance of the obligation and not to labels imposed by state law. *See Maitlen, supra,* 658 F.2d at 468; *In re Cockhill,* 72 B.R. 339, 341 (Bankr.N.D.Ill.1987). The critical and principal inquiry is whether the intent of the divorce court and the parties was to provide support or divide marital property and debts. *In re Wright,* 184 B.R. 318, 321 (Bankr.N.D.Ill.1995).

The Judgment of Dissolution of Marriage does not award maintenance or spousal support to either party. The Judgment specifically bars both parties from maintenance. There are no provisions in the Judgment for child support or child visitation inasmuch as no children were born to or adopted by the parties. The terms and the language of the Judgment in no way suggests that this provision is or should be construed as maintenance or in the nature of spousal support. Accordingly, the Court finds the debt dischargeable in Debtor's bankruptcy.

 Finally, Plaintiff contends that a sum of money representing one-half of the net value of MIES as of May 8, 2003, is due and owing to her and that that obligation is nondischargeable pursuant to Section 523(a)(4) of the Bankruptcy Code.

 Section 523(a)(4) of the Bankruptcy Code provides that a discharge in bankruptcy does not discharge an individual debtor from any debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny. In order for the Plaintiff to prevail under § 523(a)(4), she must prove either (i) that the Debtor committed fraud or defalcation while acting as a fiduciary, (ii) that the Debtor is guilty of embezzlement, or (iii) that the Debtor is guilty of larceny. Again, the Plaintiff must prove the case by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 286–87, 111 S.Ct. 654,

112 L.Ed.2d 755 (1991). Officers and directors of a corporation are deemed fiduciaries of the corporation within the meaning of § 523(a)(4). *In re Wang,* 247 B.R. 211 (Bankr.E.D.Tex.2000).

Plaintiff presented almost no evidence to support her position on this point. There was no evidence presented regarding the value of MIES on May 8, 2003. The general inference that Debtor's use of cash and checks for cash was evidence that he was committing fraud or defalcation against the corporation or the Plaintiff is tenuous at best. Also, the fact that MIES never issued shares of stock makes it questionable whether Plaintiff has standing as someone to whom a fiduciary duty was owed. Thus, the evidence falls far short of proving Plaintiff's case relative to the Section 523(a)(4) claim.

In conclusion, it appears to the Court that the filing of this adversary complaint was motivated by a desire on the part of Plaintiff to prolong and/or relitigate elements of the parties' dissolution proceeding. A purer motive or sounder basis in fact was certainly not unveiled by the evidence presented.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

### ORDER

For the reasons set forth in an Opinion entered this day,

IT IS HEREBY ORDERED that Plaintiff's Complaint be and is hereby dismissed.

IT IS FURTHER ORDERED that the Debtor's discharge in bankruptcy shall issue.

IT IS FURTHER ORDERED that the debts referred to in Plaintiff's Complaint be and are hereby declared dischargeable in Debtor's bankruptcy.